JOHN S. NYGAARD, A MINOR, BY HIS GUARDIAN AD LITEM, ARNOLD E. NYGAARD, AND ANOTHER v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
KENNETH B. ERICKSON, FATHER AND NATURAL GUARDIAN OF KENNETH R. ERICKSON, A MINOR, v. SAME.

221 N. W. 2d 151.

August 9, 1974—Nos. 44405, 44406.

*Ray G. Palmer,* for appellant.

*Rieschl, Edgerton & Theobald* and *Martin A. Rieschl,* for respondents Nygaard.

*MacDonald, Munger, Fillenworth & Bang* and *Harry L. Munger,* for respondent Erickson.

Heard before Sheran, C. J., and Peterson, Kelly, and Yetka, JJ., and considered and decided by the court.

PETERSON, JUSTICE.

In two separate actions in the St. Louis County District Court, plaintiffs Kenneth B. Erickson, father and natural guardian of Kenneth R. Erickson, a minor, and John S. and Arnold E. Nygaard were granted orders for judgment against their insurer, defendant State Farm Mutual Automobile Insurance Company. Defendant appeals from the trial court's orders denying its post-trial motions in each case for amended findings or new trial. The appeals were by stipulation consolidated since, under stipulation to facts, both cases present a common question of law concerning the validity of certain exclusions from uninsured-motorist provisions of automobile insurance policies.

In No. 44406, defendant issued an automobile insurance policy covering a 1960 Oldsmobile as the owned automobile to Kenneth B. Erickson in March 1968. The policy was thereafter renewed at 6-month intervals. Kenneth R. Erickson, the insured's son and a resident of his household, owned a Honda 2-wheel motorbike. While riding the motorbike in Duluth on June 30, 1969, the son collided with an uninsured automobile. It was stipulated that the collision was such as to give rise to liability on the part of the uninsured driver and that damages of $10,000 due to bodily injury were sustained by Kenneth R. Erickson.

The insurance policy issued to the senior Erickson provided for uninsured-motorist coverage in Insuring Agreement III. Under that agreement, the company was "[t]o pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile." The policy defined insured for purposes of Agreement III as "(1) the first person named in the declarations [Kenneth B. Erickson] and while residents of his household, his spouse and relatives of either; (2) any other person while occupying an insured automobile * * *." However, the policy also contained the following exclusion from uninsured-motorist coverage:

"Insuring Agreement III does not apply:

\* \* \* \* \*

"(b) to bodily injury to an insured while occupying or through being struck by a land motor vehicle owned by the named insured or any resident of the same household, if such vehicle is not an 'insured automobile.' "

"Insured automobile" was defined by the policy as—

"(1) an owned automobile, provided the use thereof is by such first named insured or spouse or any other person to whom such first named insured or spouse has given permission to use

such automobile, if the use is within the scope of such permission, or

"(2) an automobile not owned by the named insured or any resident of the same household, other than a temporary substitute automobile, while being operated by such first named insured or spouse."

While automobile was defined by the policy as "a four wheel land motor vehicle designed for use principally upon public roads," land motor vehicle is not defined in the policy.

The policy held by plaintiff Arnold E. Nygaard (No. 44405) was in most respects similar to the Erickson policy. The Nygaard policy was issued by defendant in March 1970 and covered a 1969 Dodge as the owned motor vehicle. Nygaard's son, John S. Nygaard, resided in his father's household. The younger Nygaard also owned a Honda motorbike.

While riding the Honda in Duluth on August 14, 1970, John S. Nygaard collided with an uninsured automobile. It was stipulated that the collision took place under circumstances giving rise to liability on the part of the uninsured vehicle's owner and driver. It was also stipulated that the collision resulted in personal injury damages to John S. Nygaard in the amount of $10,000.

Like the Erickson policy, the Nygaard policy provided for uninsured-motorist coverage, with certain exceptions. The pertinent exception in the Nygaard policy was printed in large-face, all-capital-letter type and was phrased in slightly different terms:

"Exclusions—Section III
"This insurance does not apply:
* * * * *

"(b) To bodily injury to an insured while occupying or through being struck by a land motor vehicle owned by the named insured or any resident of the same household, if such vehicle is not an owned motor vehicle."[1]

---

[1] The policy elsewhere defines "owned motor vehicle" as "the motor vehicle or trailer described in the declarations."

In both the Erickson and Nygaard cases, the injured minors sought to recover for their personal injuries under the uninsured-motorist provisions of the family automobile policy. Defendant's refusal to satisfy their claims precipitated the present actions. In both cases the trial court found the exclusionary clause ineffective to deny coverage.

The only issue raised by these appeals is whether a policy provision denying uninsured-motorist coverage to an insured while occupying a land motor vehicle other than that described in the declarations, which is owned by the named insured or a resident of his household, may operate to exclude coverage for an insured while riding an owned motorcycle. We view the question raised as containing two subordinate issues. First, is the wording of the policies such as to exclude the motorcycle accidents from the uninsured-motorist coverage? Second, if coverage for an insured injured while riding on an owned motorcycle is denied by the policy, does this exclusion result in coverage more restrictive than that mandated by the uninsured-motorist coverage statute, Minn. St. 65B.22?

Although the trial court indicated that it found some ambiguity in the policy provisions in both cases, we fail to discern any ambiguity such as to call into play the rule of resolving doubts and ambiguities against the insurer. It is clear under the policies that sons residing in the same household as the named insured are included within the definition of an insured for purposes of uninsured-motorist coverage and that "insured automobile" or "owned motor vehicle" refers to the automobile described in the policy declarations. It is also clear in both cases that the motorcycles were owned by residents of the same household as the insured. The only remaining question in determining the meaning of the exclusion is whether the term "land motor vehicle" encompasses a motorcycle. Our recent case of Taulelle v. Allstate Ins. Co. 296 Minn. 247, 207 N. W. 2d 736 (1973), unambiguously answers this question in the affirmative.

Since the policies do purport to exclude coverage, we thus

reach the more significant issue raised by this appeal—whether such an exclusion contravenes the requirements of the applicable statute or violates the public policy evinced in it. We recognize that the question presented does not admit of an easy solution and that there are decisions reaching divergent results in other jurisdictions. However, we believe that the legislative intent embodied in the statute comports with the seeming trend of recent decision in other states. In the absence of any more specific legislative or administrative guidance, we interpret our statute as forbidding the attempted exclusion of coverage in question here.

Our statute on uninsured-motorist coverage was first enacted in 1967 and was extensively revised in 1969. It provides in pertinent part:

Minn. St. 65B.22. "Subdivision 1. 'Policy of automobile liability insurance' means a policy delivered or issued for delivery in this state, insuring a natural person as named insured, and any relative or relatives of the named insured who is a resident of the same household covering automobiles owned by the insured of (a) the private passenger type, including a private passenger, station wagon or jeep type automobile not used as a public or livery conveyance for passengers, nor rented to others, or (b) the utility automobile type which shall mean any other four-wheel vehicle whether having a pick-up, sedan delivery, or panel truck type body not used primarily in the occupation, profession or business of the insured.

*  *  *  *  *

"Subd. 3.  No automobile liability or motor vehicle liability policy of insurance, included within the definition of policy of automobile liability insurance contained in subdivision 1, insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, under provi-

16

sions approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles, including colliding motor vehicles whose operators or owners are unknown or are unidentifiable at the time of the accident, and whose identity does not become known thereafter, because of bodily injury, sickness or disease, including death, resulting therefrom. The policy limits of the coverage required by this section shall be at least equal to the amount set forth in section 170.25, subdivision 3, until January 1, 1971; thereafter, at the option of the insured, the uninsured motorist limits shall be equal to those provided in the policy of bodily injury liability insurance of the insured or for such lesser limits as are designated in writing by the insured, which may not be less than the amount set forth in section 170.25, subdivision 3." [2]

We note that although the statute provides for administrative guidelines, no regulations promulgated by the commissioner of insurance have been brought to our attention.

Consideration of the permissibility of the exclusion in question under the uninsured-motorist statute necessarily begins with our holding in Northland Ins. Co. v. West, 294 Minn. 368, 201 N. W. 2d 133 (1972). In that case the defendant, while driving his own motorcycle, was involved in an accident with an uninsured motorist and sought to recover under the uninsured-motorist coverage of the insurance policy he carried on his automobile. After examining the insuring agreement and the policy definition of "insured," both similar to those in the policies in question here, the court concluded that "the coverage to be afforded to a 'named insured' under the endorsement has nothing to do with the automobile owned by defendant except that such coverage is contained in an endorsement to the policy insuring defendant's automobile." 294 Minn. 371, 201 N. W. 2d 134. The court

---

[2] Minn. St. 65B.22, subd. 8, requires that the higher limit be provided after January 1, 1972. Minn. St. 1971, § 65B.22, subd. 8, as amended by L. 1973, c. 35, § 21.

further noted that the uninsured-motorist statute also "does not purport to tie the uninsured motorist protection to the insured vehicle." 294 Minn. 374, 201 N. W. 2d 136. We therefore held that in the absence of any exclusionary clause, the insured was covered by the uninsured-motorist provisions of the policy while riding on his motorcycle.

Although Northland articulated the basic premise that "uninsured motorist protection is not coverage for vehicles but for persons," 294 Minn. 373, 201 N. W. 2d 135, the present case nevertheless is concerned with the issue not directly decided by Northland. In considering the permissibility of excluding an insured occupying another owned vehicle from uninsured-motorist coverage, courts in other jurisdictions have not all reached the same result. We recognize that differences in policy language and statutes are in part responsible for the divergent results. However, in so far as the divergent results represent a difference in perspective, we find more persuasive the growing number of cases holding exclusions such as those in question here inconsistent with the purpose and philosophy of mandatory uninsured-motorist coverage.

In some of the earlier cases, the circumstances present are not exactly analogous to those involved in the instant case. In Westerhausen v. Allied Mutual Ins. Co. 258 Iowa 969, 140 N. W. 2d 719 (1966) and Valdes v. Prudence Mutual Cas. Co. 207 So. 2d 312 (Fla. App. 1968), both relied on by this court in Northland, the exclusionary clause denied coverage to an insured while occupying an automobile owned by the named insured other than the insured automobile. The courts in both instances simply decided that the word "automobile" was not synonymous with "motorcycle" and therefore held the insurance companies liable. But cf. Taulelle v. Allstate Ins. Co. 296 Minn. 247, 207 N. W. 2d 736 (1973) (automobile held to include motorcycle, with the result that uninsured-motorist coverage extended to insured riding on uninsured motorcycle owned by another). On the other hand, in Shipley v. American Standard Ins. Co. of Wis. 183 Neb. 109,

112, 158 N. W. 2d 238, 240 (1968), the exclusion of other owned automobiles was held to encompass a motorcycle and the insured was not allowed to recover; while recognizing the protective purpose of the statutory requirement of uninsured-motorist coverage, the court reasoned that "[a]n overriding public policy of protecting an owner-operator who inexcusably has no applicable bodily injury liability coverage is not presently discernible."

In the more recent cases, the exclusion in question has for the most part been phrased in terms of "motor vehicle" rather than "automobile." Thus the courts have had to deal directly with the purposes and policies of uninsured-motorist statutes. Although two lines of authority have developed, by now perhaps a majority of courts which have dealt with the issue has held that the exclusion of coverage of an insured while occupying an owned vehicle other than the insured vehicle is invalid. See, e. g., State Farm Auto. Ins. Co. v. Reaves, 292 Ala. 218, 292 So. 2d 95 (1974); Lowery v. State Farm Mutual Auto. Ins. Co. 285 So. 2d 767 (Miss. 1973), and cases cited therein; Mullis v. State Farm Mutual Auto. Ins. Co. 252 So. 2d 229 (Fla. 1971); State Farm Auto. Ins. Co. v. Hinkel, 87 Nev. 478, 488 P. 2d 1151 (1971); Aetna Ins. Co. v. Hurst, 2 Cal. App. 3d 1067, 83 Cal. Rptr. 156 (1969). While few of these decisions have relied on specific legislative history in holding the exclusion of coverage invalid, they have generally agreed in finding the exclusion offensive to the public policy of protection embodied in the uninsured-motorist statutes. According to these opinions, a policy excluding uninsured-motorist coverage for the insured occupying another owned vehicle is invalid because "it is not the intent of the statute to limit coverage to an insured by specifying his location or the particular vehicle he is occupying at the time of injury." Travelers Ind. Co. v. Powell, 206 So. 2d 244, 246 (Fla. App. 1968).

The argument can be made that a family owning two motor vehicles should not be permitted to pay for insurance on only one and recover benefits for injuries sustained while operating the

other. See, e. g., Rushing v. Allstate Ins. Co. 216 So. 2d 875 (La. App. 1968); but see, Elledge v. Warren, 263 So. 2d 912 (La. App. 1972); State Farm Mutual Ins. Co. v. Hinkel, *supra;* see, also, Widiss, A Guide to Uninsured Motorist Coverage, § 2.9. However, the uninsured-motorist statute contains no provisions withholding protection for an insured for owning one vehicle which is not insured. Rather, the purpose of our statute is to provide the insured with financial protection against uninsured motorists whose negligence results in personal injury to him. Our statute defines "policy of automobile liability insurance" in part as a policy "insuring a natural person as named insured, and any relative or relatives of the named insured who is a resident of the same household" and mandates uninsured-motorist coverage "for the protection of persons insured thereunder." Minn. St. 65B.22, subds. 1 and 3. The statute places no geographical limits on coverage and does not purport to tie protection against uninsured motorists to occupancy of the insured vehicle. Since our statute requires this broad coverage "for the protection of persons," we must leave to the legislature the sanctioning of any exceptions dependent on the location of an insured.

As we held in Northland Ins. Co. v. West, 294 Minn. 368, 373, 201 N. W. 2d 133, 135, "uninsured motorist protection is not coverage for vehicles but for persons, even though it is contained in an insurance policy otherwise insuring an automobile." If our interpretation of the intent of the uninsured-motorist statute is correct, little room is left for an insurer unilaterally to narrow the geographic scope of the statutorily required coverage. We therefore conclude that the trial court properly invalidated the exclusions in question as inconsistent with the requirements of the uninsured-motorist statute.

Affirmed.