William GUDVANGEN, Individually, and as Guardian Ad Litem of Gail Gudvangen, a Minor, Appellant,

v.

AUSTIN MUTUAL INSURANCE COMPANY, Respondent.

No. 48045.

Supreme Court of Minnesota.

May 26, 1978.

On Rehearing Sept. 7, 1979.

Dickel, Johannson, Wall & Taylor and Kenneth F. Johannson, Crookston, for appellant.

Cahill, Gunhus, Streed, Grinnell, Jeffries & Klinger and Steven J. Cahill, Moorhead, for respondent.

Heard before TODD, YETKA and SCOTT, JJ., and considered and decided by the court en banc.

YETKA, Justice.

Plaintiff is appealing from an order of the Polk County District Court dismissing his complaint for declaratory relief. The district court determined that the uninsured motorist provision of the automobile liability insurance policy issued to plaintiff did not provide coverage for his minor daughter who was a passenger on a nonowned, uninsured motorcycle which was involved in a collision with an automobile. We reverse.

The case was submitted to the district court on the following stipulated facts:

"I.

"On or about the 17th day of August, 1975, at approximately 2:30 p.m., plaintiff's minor, Gail Gudvangen, was riding as a passenger on a motorcycle being driven by Millia Belen on a gravel road in Garfield Township, approximately 1½ miles west of the City of Fertile, State of Minnesota.

"II.

"At said time and place, one Carline Julia Berhow was operating a motorcycle owned by Jonathan C. Benesh and was proceeding in the same direction as the motorcycle on which plaintiff's minor was a passenger.

"III.

"Further at said time and place, one Kenneth Loren Murray was operating an automobile on said road and was proceeding in the opposite direction of the motorcycles referred to in paragraphs one and two.

"IV.

"A collision occurred at such time and place involving the motorcycle on which plaintiff's minor was a passenger and the automobile being operated by Kenneth Loren Murray.

"V.

"As a result of said collision, plaintiff's minor has sustained physical injuries of an amount undetermined at this time.

"VI.

"The motorcycle driven by Millia Belen was uninsured on the 17th day of August, 1975.

"VII.

"The motorcycle driven by Carline Julia Berhow was uninsured on the 17th day of August, 1975.

"VIII.

"The automobile operated by Kenneth Loren Murray was on said date insured by Manchester Insurance Company, which company is presently in receivership, and may, for purposes of submission of the issue here presented, but for no other purpose, be considered by the Court to be free of fault for the accident.

"IX.

"Plaintiff and plaintiff's minor informed defendant of the accident and injury and have asserted a claim against defendant.

"X.

"That on the 17th day of August, 1975, the plaintiff was the named insured of defendant's automobile insurance policy # 10–54–87, a copy of which is hereto attached as Exhibit A and incorporated by reference. Under the terms of the policy, a 1966 Chevrolet 4/door station wagon and a 1971 GMC pickup truck were covered, providing for, among other items, uninsured motorists coverage in the amount of $50,000.00 on each vehicle for injury to any one person.

"XI.

"Gail Gudvangen is the daughter of the plaintiff and was a resident of the plaintiff's household at the time and place of the accident which is the subject of this lawsuit.

"XII.

"The issue to be tried in this case is whether plaintiff is entitled to uninsured motorists protection under the terms of the policy and pursuant to Minnesota Statutes." [1]

1. At oral argument, the parties appeared to retreat from their stipulation that the automobile was without fault. For the purposes of this opinion we treat the stipulation as abandoned.

The parties raise the following issues on appeal:

(1) Did the policy issued by defendant provide coverage to plaintiff where his insured would be legally entitled to recover damages against the owner or operator of an uninsured motorcycle?

(2) Did Minn.St.1976, § 65B.49, subd. 4, require an insurer to provide uninsured motorist coverage for accidents involving damages caused by owners or operators of uninsured motorcycles?

■ Defendant concedes that the plaintiff would have a valid claim against it if it were found that the automobile was at fault in the accident. The automobile's insurer is in receivership, and thus the automobile is uninsured for the purposes of Minn.St. 65B.49, subd. 4(3), because no plan of reparation security is in effect. Nothing in the legislative history of L.1974, c. 408, the so-called no-fault law, evidences an intent to alter the principles of *Northland Insurance Co. v. West,* 294 Minn. 368, 201 N.W.2d 133 (1972), and *Nygaard v. State Farm Mutual Auto. Ins. Co.,* 301 Minn. 10, 221 N.W.2d 151 (1974). These cases held that no geographical limits could be placed upon uninsured motorist coverage because persons and not vehicles were protected. Similarly, under the present statute coverage is available to an insured without regard to location.

If it had been determined that the automobile was at fault in the accident, then our inquiry could end. This declaratory judgment action was brought, however, prior to any fact determination either in litigation or arbitration. The issue directly presented to the trial court through the stipulated facts is whether the insured is entitled to recover under the policy if only the motorcycle was at fault.[2]

1. Uninsured motorist coverage in the policy.

The policy at issue provides, in relevant part, the following protection:

"To pay all sums which the insured or his legal representatives shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile * * * sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile * * *.

"Uninsured automobile is defined as:

"(a) An automobile or trailer with respect to the ownership, maintenance, or use of which there is, in at least the amount specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury, liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile * * *."

The section providing this coverage does not itself further define automobile but it incorporates other definitions by reference. The general liability provisions of the policy incorporated into the uninsured motorist protection by reference contain definitions of various types of automobile including the following:

" '[P]rivate passenger automobile' means a four wheel private passenger, station wagon or jeep type automobile;

" 'farm automobile' means an automobile of the truck type * * *;

" 'utility automobile' means an automobile * * * of the pick-up body, sedan delivery or panel truck type * * *."

The term "automobile," unqualified, is not defined in the policy. The term "motor vehicle," defined to expressly exclude motorcycles, is not used in the uninsured motorist provision of the policy.

---

**2.** We could remand this case for a determination of the automobile liability and avoid deciding this issue. We decline to do so because this course would involve the possibility of yet another appeal. In light of the apparent abandonment of the stipulation regarding the automobile, we choose to consider all issues in this appeal.

Following the principles of *Taulelle v. Allstate Insurance Co.,* 296 Minn. 247, 207 N.W.2d 736 (1973), the policy must be interpreted so as to exclude coverage for accidents caused by uninsured motorcycles. In *Taulelle,* we recognized that "automobile" does not usually describe a motorcycle, but held that the policy definition of an automobile as a "land motor vehicle" was broad enough to include motorcycles. The present policy has no such broad definition. In the present case, the definitions of the various types of automobile exclude motorcycles from their scope. Like the present case, the *Taulelle* case involved an insured who was a passenger on a nonowned, uninsured motorcycle. Unlike cases which have been decided in other jurisdictions, in *Taulelle* this court did not determine that the statute itself required such coverage, but that the policy itself provided coverage.[3] Although *Nygaard v. State Farm Mutual Auto. Ins. Co. supra,* settled this question under Minn.St.1971, § 65B.22, changes in the law regarding uninsured motorist protection require a reexamination of the issue presented. Unlike *Taulelle v. Allstate Insurance Co. supra,* and *Nygaard v. State Farm Mutual Auto. Ins. Co. supra,* the present issue does not depend solely upon the location of the insured, but depends additionally upon who was at fault in the accident. If the automobile was free from fault, then the policy expressly provides no coverage and only if the statute required insurance against uninsured motorcycles would plaintiff be entitled to recover.

2. Coverage under Minn.St.1976, § 65B.49, subd. 4.

The Minnesota no-fault law effected major changes in automobile liability insurance law. Among other things, it made liability insurance mandatory for all automobiles licensed in this state and made first party, so-called no-fault coverage mandatory to reimburse certain basic losses.[4] In addition to requiring liability and economic loss coverage, the no-fault law continues the requirement of Minn.St.1971, § 65B.22 that all automobile liability policies issued in Minnesota contain uninsured motorist coverage.[5]

At the time relevant to the present accident Minn.St.1976, § 65B.49, subd. 4, provided in part:

"(1) On and after January 1, 1975, no plan of reparation security may be renewed, delivered or issued for delivery, or executed in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in the amounts of $25,000 because of injury to or the death of one person in any accident, and subject to the said limit for one person, $50,000 because of bodily injury to or the death of two or more persons in any one accident, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of injury.

\* \* \* \* \* \*

"(3) 'Uninsured motor vehicle' means any motor vehicle for which a plan of reparation security meeting the requirements of Laws 1974, Chapter 408 is not in effect."

Minn.St. 65B.43, subd. 2, appears to exclude motorcycles from this coverage.[6] An examination of the context, legislative history, and subsequent amendatory acts reveals, however, that the legislature did not

---

**3.** See, e. g., *Chakalos v. Phoenix Insurance Co.* 110 N.H. 321, 267 A.2d 573 (1970); Annotation, 65 A.L.R.3d 851, § 3(a), and *Northland Insurance Co. v. West,* 294 Minn. 368, 201 N.W.2d 133 (1972).

**4.** Minn.St. 65B.48.

**5.** The effect of continuing required uninsured motorist coverage as a part of *required* automobile liability policies is to expand the number of persons who will in fact be protected against uninsured motorists.

**6.** Minn.St. 65B.43, subd. 2, provides that the following definition applies to the no-fault act unless the context otherwise requires: " 'Motor vehicle' means every vehicle other than a motorcycle or other vehicle with fewer than four wheels \* \* \*."

intend to reduce uninsured motorist coverage by allowing motorcycles to be excluded. The apparent reason for excluding motorcycles from mandatory no-fault insurance was the prohibitive cost to the motorcycle operator. The no-fault law still requires motorcycle operators to maintain liability insurance. Minn.St. 65B.48, subd. 5. Laws 1977, c. 266, § 2, amended the provisions of Minn. St.1976, § 65B.49, subd. 4(3) to read as follows:

" 'Uninsured motor vehicle' means any motor vehicle *or motorcycle* for which a plan of reparation security meeting the requirements of Sections 65B.41 to 65B.71 is not in effect." (Italics supplied.)

■ While adoption of an amendment expanding a statutory definition raises a presumption that the legislature intended to change preexisting law, that presumption may be rebutted. *State, by Spannaus v. Coin Wholesalers, Inc.,* Minn., 250 N.W.2d 583, 587 (1976). In the present case, an examination of the amending legislation clearly rebuts the presumption. Laws 1977, c. 266, originally Senate File 1338, contains the following title:

"An act relating to automobile insurance; *clarifying certain ambiguous provisions in the Minnesota no-fault automobile insurance act;* amending Minnesota Statutes 1976, Sections 65B.44, Subdivision 3; 65B.49, Subdivisions 4 and 6; 65B.51, Subdivision 1; and 65B.53, Subdivision 1." (Italics supplied.)[7]

The legislature has expressly stated that the addition of the term "motorcycle" to § 65B.49 is a clarification and thus we must infer that the limited definition of motor vehicle in § 65B.43, subd. 2, was never intended to apply to uninsured motorist coverage.

Because we find that the legislature required insurance against uninsured motorcycles we hold that the limitation of that coverage in the plaintiff's insurance policies with defendant is void. The plaintiff is covered under defendant's policy whether the uninsured automobile or the uninsured motorcycle was at fault.

Reversed.

## OPINION ON REHEARING

YETKA, Justice.

■ By way of further explanation for our earlier decision, we think it clear that in adopting the concept of no-fault insurance into the Minnesota statutes, the legislature intended no change in the law insofar as uninsured motorist insurance protection is concerned. The statutes dealing will uninsured motorist insurance were intended to be incorporated intact. Since decisions of this court prior to no fault, cited in the main opinion, make it clear that the protection of the uninsured motorist statutes applied to persons and not vehicles, appellant would be covered.

■ The 1977 amendments to no fault added nothing to change the law, therefore, but reworded and clarified the statutes to comply with what the law already was as interpreted by earlier decisions of this court. Thus, there is really no question of retroactivity to be decided.

With this explanation, our earlier decision is affirmed.

OTIS, Justice (dissenting).

Following en banc reargument I am persuaded the trial court should be affirmed in this appeal.

The plaintiff Wilbur Gudvangen has brought this action against the defendant Austin Mutual, the insurer of plaintiff and his family, to recover uninsured motorist benefits under a policy which covers plaintiff's two automobiles, neither of which was involved in this accident. Gail Gudvangen, plaintiff's daughter, was injured on August 17, 1975, while riding as a passenger on an uninsured motorcycle which collided with an uninsured automobile and another uninsured motorcycle.

---

7. The title of an act is indicative of legislative intent. *State v. Northwestern States Portland Cement Co.,* 258 Minn. 162, 103 N.W.2d 225 (1960).

The policy issued by Austin to plaintiff, as conceded by the majority, excludes coverage for accidents caused by uninsured motorcycles. The narrow question then is whether Chapter 408 of the Laws of 1974 mandates coverage where injuries are inflicted by an uninsured motorcycle prior to the adoption on May 25, 1977, of Chapter 266, Laws of 1977.

At the time of this accident the applicable statutes were set forth in Chapter 408 of the Laws of 1974, codified as Minn.St. 65B.43, subds. 1 and 2, and Minn.St. 65B.49, subd. 4, (1), (2) and (3) which provide as follows:

§ 65B.43 "Subdivision 1. The following words and phrases, shall, for the purpose of Laws 1974, Chapter 408, have the meanings ascribed to them, except where the context clearly indicates a different meaning.

"Subd. 2. 'Motor vehicle' means every vehicle, *other than a motorcycle* or other vehicle with fewer than four wheels, which (a) is required to be registered pursuant to Minnesota Statutes Chapter 168, (b) is designed to be self-propelled by an engine or motor for use primarily upon public roads, highways or streets in the transportation of persons or property, or (c) is a trailer, when connected to or being towed by a motor vehicle." (Italics supplied.)

§ 65B.49 "Subd. 4. Uninsured or hit-and-run motor vehicle coverage. (1) On and after January 1, 1975, no plan of reparation security may be renewed, delivered or issued for delivery, or executed in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in the amounts of $25,000 because of injury to or the death of one person in any accident, and subject to the said limit for one person, $50,000 because of bodily injury to or the death of two or more persons in any one accident, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of injury.

"(2) Every owner of a motor vehicle registered or principally garaged in this state shall maintain uninsured motor vehicle coverage as provided in this subdivision.

"(3) 'Uninsured motor vehicle' means any motor vehicle for which a plan of reparation security meeting the requirements of Laws 1974, Chapter 408 is not in effect."

These statutes included in one chapter the provisions for so-called "no-fault" coverage and "uninsured motor vehicle" coverage, incorporating by reference as an uninsured motor vehicle the no-fault definition which explicitly excluded motorcycles. Accordingly by the terms of the statute, on the date of this accident, liability insurance policies were not required to include uninsured motorist coverage where the injury was inflicted by the operation of a motorcycle.

For reasons which do not appear in the record and are not apparent otherwise, a subsequent legislature in 1977 adopted Chapter 266 changing Minn.St. 65B.49, subd. 4, (3), to add the words "or motorcycle" so as to read as follows:

" 'Uninsured motor vehicle' means any motor vehicle or motorcycle for which a plan of reparation security meeting the requirements of sections 65B.41 to 65B.71 is not in effect."

The preamble to that chapter described it as "An Act relating to automobile insurance; clarifying certain ambiguous provisions in the Minnesota no-fault automobile insurance act." I submit that whatever may have been the intention of the 1974 legislature the explicit language of Chapter 408 could not have been clearer or less ambiguous. I have the greatest difficulty in accepting the principle that where a specifically defined vehicle is expressly excluded in one law, a subsequent law merely clarifies the intent of a prior legislature by explicitly including vehicles it previously excluded.

In any case, unless we are to overrule a long line of cases which have approved a

fundamental rule of construction for the last 100 years, the 1977 legislature had no authority to construe the intent of the 1974 legislature. In *Bingham v. Supervisors of Winona Co.,* 8 Minn. 390, 398, (441, 448) (1878) we said:

" * * * It is only the intent of the legislature which enacts a statute that is to govern courts in the construction thereof. The opinion of a subsequent legislature upon the meaning of a statute, is entitled to no more weight than that of the same men in a private capacity."

Subsequently we approved the rule stated in the *Bingham* case in *Anderson v. Firle,* 174 Minn. 333, 337, 219 N.W. 284, 285 (1928) where we stated: "We recognize the rule that one legislature is not the interpreter of the laws enacted by a prior legislature."

More recently in *Martinco v. Hastings,* 265 Minn. 490, 497, 122 N.W.2d 631, 638 (1963) we noted: "If there is to be a change in the statute, it must come from the legislature, for the courts cannot supply that which the legislature purposely omits or inadvertently overlooks."

Whether the failure to require uninsured motorist coverage for injuries inflicted by a motorcycle was intentional or inadvertent, the liability carriers had a right to rely on the express language of the statute as long as it remained unamended. To that extent justice and equity clearly conferred on liability carriers a "vested interest" in limiting their exposure to only those risks which were expressly covered in their policies or were mandated by statute. There can be no dispute but that neither the law nor the policy provided coverage for accidents caused by motorcycles on the date of the accident giving rise to this litigation.

The majority opinion on rehearing refers to the rule that protection under the uninsured motorist statute applies to "persons" and not "vehicles." With deference to the majority, I submit that the broad language of that rule has no bearing whatever on the facts of this case. The cases which have adopted and applied that rule have held only that persons who are insured under an automobile liability policy need not be occupants of the car described in the policy to enjoy uninsured motorist coverage. All we have held in this regard is that the named insured and members of his household are entitled to uninsured motorist benefits whether they are injured while riding in the vehicle described in the insured's policy or whether they are pedestrians or riding in any other vehicle, either an automobile or a motorcycle. None of these cases requires uninsured motorist coverage where the vehicle which causes the injury is expressly excluded by the policy and is a vehicle as to which coverage is not mandated by statute.

Four cases are cited for the proposition that "uninsured motorist protection is not coverage for vehicles but for persons": *Northland Insurance Co. v. West,* 294 Minn. 368, 201 N.W.2d 133 (1972); *Taulelle v. Allstate Insurance Co.,* 296 Minn. 247, 207 N.W.2d 736 (1973); *Nygaard v. State Farm Mutual Auto. Ins. Co.,* 301 Minn. 10, 221 N.W.2d 151 (1974); and *Oberstar v. State Farm Mutual Auto. Ins. Co.,* 301 Minn. 406, 222 N.W.2d 557 (1974).

In *Northland* the injured party was struck by an uninsured automobile while riding on a motorcycle. Although the motorcycle was not the vehicle named in the injured party's insurance policy covering a different vehicle, we held that the insurance on the injured party's automobile gave him uninsured motorist coverage when struck by an uninsured car whether he was riding in his insured vehicle or in any other vehicle.

The *Taulelle* case simply held that by the express terms of his policy the insured who was injured while riding a motorcycle was riding an insured automobile. We relied heavily on the fact that motorcycles were not explicitly excluded from coverage. In contrast to the facts in *Taulelle,* it is conceded that the policy issued to plaintiff excludes coverage unless it is mandated by statute.

In *Nygaard* we dealt with two wholly unrelated accidents governed by the same rule of law. There we held that where the injured parties were on motorcycles struck by an uninsured automobile, policies of in-

surance under which the injured parties were otherwise covered could not exclude uninsured motorist benefits simply because the injured parties were occupying motorcycles which were not covered by the insured's policy. Again the question for decision was not whether the insuror could exclude injuries inflicted by an uninsured motorcycle, but only whether injuries inflicted by an uninsured automobile could be excluded because the injured parties were not riding in the automobile which the policy expressly covered.

Finally, in *Oberstar*, we held that by the express definitions in the policy itself, colliding snowmobiles were automobiles for purposes of affording uninsured motorist coverage to persons included within automobile liability policies as long as the snowmobiles were being operated on a public road.

The language in our cases to the effect that uninsured motorist coverage is protection for persons and not for vehicles means only one thing, that to enjoy the benefits of uninsured motorist coverage it is not necessary that injured parties be riding or occupying the vehicles which are described in their liability policies. The rule is narrowly applied in all of these cases to provide protection wherever an insured is injured by an uninsured vehicle as that vehicle is defined either by statute or in a particular policy. But to hold that this principle gives coverage where neither the policy nor the law requires it is, in my opinion, a totally unwarranted deprivation of rights for which defendant has contracted. It denies defendant a valid defense which was vested at the time of this accident. See, *Halverson v. Rolvaag*, 274 Minn. 273, 275, 143 N.W.2d 239, 241 (1966). Accordingly I would affirm the trial court.

PETERSON, Justice (dissenting).

I join in the dissent of OTIS, J.