**AMERICAN MOTORIST INSURANCE COMPANY, Respondent,**

v.

**Vicky M. SARVELA, Appellant.**

**No. 81–1210.**

Supreme Court of Minnesota.

Nov. 24, 1982.

Robert C. Hoene, St. Paul, for appellant.

Lasley, Gaughan, Reid, Stich & Angell and Michael S. Kreidler, Minneapolis, for respondent.

Hvass, Weisman & King and Gary Stoneking, Minneapolis, for Minnesota Trial Lawyers Assn.

TODD, Justice.

This case involves a dispute over insurance coverage under the Minnesota No-Fault Insurance Act, Minn.Stat. § 65B.41, et seq. (1980). The stipulated facts disclose that Vicky M. Sarvela was riding her motorcycle when struck by an automobile driven by Sharon Johnson. Sarvela suffered severe personal injuries.[1]

Sarvela collected $50,000, which was the combined policy limit from Johnson's insurer and her motorcycle's underinsured cover-

---

1. For the purposes of summary judgment, the parties have stipulated that her damages exceed $50,000, and that the date of the accident was June 9, 1978.

age. She then sought to recover underinsured benefits on an automobile she owned.[2]

The insurance policy contained an exclusionary clause which the parties agree precludes coverage if enforceable. The exclusionary clause reads as follows:

> This insurance does not apply: (a) to bodily injury to an insured while occupying an automobile or a highway vehicle (other than an insured highway vehicle) owned by the named insured or a relative, or through being struck by such an automobile or highway vehicle.

A reading of the clause indicates that the policy covers only an "insured automobile". An "insured automobile" is defined in the uninsured section of the policy as "an automobile described in the policy for which a specific premium charge indicates that coverage is afforded * * * ". The parties agree the exclusion is applicable.

The trial court correctly concluded that plaintiff's operation of a motorcycle at the time of the accident does not preclude recovery. However, the trial court incorrectly denied recovery because the underinsured coverage was optional, not mandatory. We reject this distinction and reverse.

This appeal presents two issues.
(1) May an insured obtain underinsured coverage from her automobile policy when she is injured while riding a motorcycle?
(2) Is a policy exclusion which precludes coverage for an insured's injuries arising from a vehicle owned by the insured but not insured under the insurance policy, consistent with the provisions of the Minnesota No-Fault Automobile Insurance Act?

1. American Motorist argues that § 65B.46, subd. 3, excludes motorcycles from coverage under the No-Fault Act. Therefore, Sarvela should be denied underinsured coverage.

2. This was a 1975 Chevrolet insured by the respondent, American Motorist Insurance Company.

3. *Gudvangen* involved a collision between an automobile and uninsured motorcycle. A passenger on the motorcycle sought uninsured benefits under her parent's automobile policy.

■ The trial court correctly concluded that "the limitation in the No-Fault Act for injuries occurring on a motorcycle is specifically contained in the section establishing the right to basic economic loss benefits". *Gudvangen v. Austin Mutual Insurance Co.,* 284 N.W.2d 813 (Minn.1978), *aff'd on rehearing,* 284 N.W.2d 817 (1979), *appeal dismissed,* 444 U.S. 1062, 100 S.Ct. 1002, 62 L.Ed.2d 745 (1980). Section 65B.46 refers only to an insured's right to basic economic loss benefits. It has no applicability to the underinsured coverages. Underinsured, like uninsured coverage, existed before the enactment of the No-Fault Act. Act of May 27, 1971, ch. 581, § 1, 1971 Minn. Laws 1082, (codified at Minn.Stat. § 65B.26 (d) (1971) (repealed 1980). Subsequently, its provisions were incorporated into the No-Fault Act unchanged. Thus, underinsured coverage like uninsured is not subject to the Act's motorcycle exclusions.

This conclusion is supported by *Gudvangen*.[3] *Gudvangen* analyzed the incorporation of uninsured coverage into the Act.

> * * * we think it clear that in adopting the concept of no-fault insurance into the Minnesota statutes, the legislature intended no change in the law insofar as uninsured motorist insurance protection is concerned. The statutes dealing with uninsured motorist insurance were intended to be incorporated intact.

284 N.W.2d at 817

2. The trial court in upholding the exclusion found the controlling factor to be that "[u]nderinsured motorist coverage, unlike uninsured and economic loss coverage is not mandatory." Since this coverage was optional, the trial court found the legislative policy favoring underinsured motorist coverage to be insufficient to void the policy exclusion. Additionally, it relied upon the

The court held that the uninsured motorist statute required coverage for accidents involving uninsured motorcycles. The court relied upon this analysis to find a policy exclusion void which limited coverage for accidents involving uninsured motorcycles.

repeal of the statute in 1980. Act of April 12, 1980, ch. 539, § 7, 1980 Minn.Laws 700, 702.

American Motorist contends the trial court was correct because this court has voided policy exclusions only when the coverages were mandatory. This is an incorrect characterization of the law. The original uninsured motorist statute required coverage unless the insured decided in writing that he did not desire the coverage. Minn. Stat. § 72A.149 (1967). It was an optional coverage. In cases with very similar fact patterns, this court has voided policy exclusions under the then-optional uninsured motorists statute. *See Nygaard v. State Farm Mutual Automobile Insurance Co.,* 301 Minn. 10, 221 N.W.2d 151 (1974) (court voided exclusionary clause which precluded stacking of uninsured coverage when insured injured on motorcycle); *Van Tassel v. Horace Mann Insurance Co.,* 296 Minn. 181, 207 N.W.2d 348 (1973) (court voided exclusionary clause in permitting stacking of uninsured benefits under the previous optional coverage requirement).

*Holman v. All Nation Insurance Co.,* 288 N.W.2d 244 (Minn.1980), permitted the stacking of underinsured benefits. It stated that "first party benefits would be stacked in order of their closeness to the risk * * *". *Id.* at 251. In *Holman,* the insurer also argued that underinsured coverage was optional and could not be stacked. The court did not find it significant that this was an optional coverage in ordering stacking.

It is true that underinsured motorist coverage is not required to be included in the policy, as uninsured motorist coverage is. However, once the supplemental coverages have been offered and accepted, the insurer may not, under Minnesota law refuse to "write them up" and provide them to its insured.
*Id.*

It is well-established that first party coverages for which an insured pays a premium follow the person, not the vehicle.[4] Policy exclusions which attempt to prevent the coverage from following the person are inconsistent with the purposes of the Minnesota No-Fault Act.[5]

The judgment is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.

---

4. *Northland Insurance Co. v. West,* 294 Minn. 368, 374, 201 N.W.2d 133, 136 (1972); *Oberstar v. State Farm Mutual Automobile Insurance Co.,* 301 Minn. 406, 410, 222 N.W.2d 557, 559 (1974); *Integrity Mutual Insurance Co. v. State Automobile & Casualty Underwriters Insurance Co.,* 307 Minn. 173, 177–178, 239 N.W.2d 445, 448 (1976); *Kaysen v. Federal Insurance Co.,* 268 N.W.2d 920, 925 (Minn.1978); *Gudvangen v. Austin Mutual Insurance Co.,* 284 N.W.2d 813, 815 (Minn.1978), *aff'd on rehearing,* 284 N.W.2d 817 (1979), *appeal dismissed,* 444 U.S. 1062, 100 S.Ct. 1002, 62 L.Ed.2d 745 (1980); *Iverson v. State Farm Mutual Automobile Insurance Co.,* 295 N.W.2d 573, 576 (Minn.1980). *See* Steenson, *A Primer on Minnesota No-Fault Automobile Insurance,* 7 Wm. Mitchell L.Rev. 313, 350–351 (1981).

5. Minn.Stat. § 65B.42 (1980), states the purposes of the Act.

The detrimental impact of automobile accidents on uncompensated injured persons * * * requires * * * that sections 65B.41 to 65B.71 be adopted * * *.

(1) To relieve the severe economic distress of uncompensated victims of automobile accidents within this state by requiring automobile insurers to offer and automobile owners to maintain automobile insurance policies * * *.