Mary Jo BURGRAFF, Respondent,

v.

AETNA LIFE & CASUALTY COMPANY, Appellant.

No. C5–82–1102.

Supreme Court of Minnesota.

March 30, 1984.

John H. Hinderaker, Gerard M. Nolting, Minneapolis, for appellant.

John C. Goetz and James R. Schwebel, Minneapolis, for respondent.

Jon K. Hammarberg, Bloomington, for American Family Mut. Ins. Co. amicus curiae.

■

SIMONETT, Justice.

The issue here is whether the provision in an auto liability policy defining who is a "relative" of the named insured for underinsured motorist coverage is, as the trial court decided, contrary to the provisions of the No-Fault Act and, therefore, invalid. We conclude that the statutory definition of "relative" in the No-Fault Act applies to underinsured motorist coverage and that the insurance policy's definition of "relative" is inconsistent with the statutory definition and is, therefore, invalid. We affirm.

On October 1, 1977, while a passenger in her boyfriend's automobile, plaintiff-respondent Mary Jo Burgraff was involved in an accident with another car and was seriously injured. Both cars involved in the accident were insured. At the time of her accident, Mary Jo also owned an automobile on which she had insurance. In addition, she was living at home with her parents and her father had two automobiles insured with defendant-appellant Aetna Life and Casualty Company. Mary Jo collected the $25,000 limits from her boyfriend's insurer, the $25,000 limits from the insurer of the other car involved in the accident, and $40,000 from the insurer of her own automobile in settlement of her claim that she had not been offered underinsured motorist coverage as mandated under then existing statutes. In addition, Mary Jo has also received $30,000 in no-fault benefits under her own policy. These payments still leave her inadequately compensated for her injuries.

Plaintiff Mary Jo Burgraff, therefore, brings this declaratory judgment action against defendant Aetna, claiming she is entitled to underinsured motorist coverage under her father's policy. This coverage is extended under Aetna's policy to any relative of the named insured residing in the insured's household, which indisputably includes Mary Jo. Aetna's definition of "relative," however, goes on to exclude any such relative who "owns a private passenger automobile." Since Mary Jo owns an automobile, Aetna denied Mary Jo underinsured motorist coverage under her father's policies. Both parties agree that if this exclusion is valid, then Mary Jo cannot recover under her father's policies.

The trial court, in its summary judgment order, held that the policy definition of "relative" was contrary to the Minnesota No-Fault Act, Minn.Stat. §§ 65B.41–.71 (1982), and therefore invalid insofar as it excludes coverage to a relative on the grounds that that person owns a private passenger automobile. The effect of this ruling is to bring Mary Jo within the coverage of her father's policy for underinsurance benefits, and Aetna appeals.

I.

The first issue we asked the parties to brief was whether the definition of "insured" contained in Minn.Stat. § 65B.43, subd. 5 (1982), applies to underinsured motorist coverage. This question arises because both uninsured and underinsured motorist coverage existed before our No-Fault Act was enacted.

Since 1980, when the legislature repealed the mandatory offer for underinsured motorist coverage, there has been no reference in the No-Fault Act to underinsured motorist coverage. Aetna argues here that the No-Fault Act's definition of "insured," which is applied to determine coverage of no-fault benefits, should also be used to determine coverage of *uninsured* motorist benefits and therefore also *underinsured* motorist benefits. We agree.

■ 1. First of all, we conclude that the definition of "insured" in section 65B.43, subd. 5 (1982), applies to *uninsured* motorist coverage. This subdivision says that "insured" means "an insured under a plan of reparation security as provided by sec-

tions 65B.41 to 65B.71 * * *."[1]   Plainly, uninsured motorist coverage—which is in section 65B.49, subd. 4—comes within the ambit of "sections 65B.41 to 65B.71," and particularly must this be so when the section mandates that uninsured motorist coverage "for the protection of persons insured" shall be provided in any plan of reparation security.

We do not think our case law is inconsistent with this statutory interpretation.   In *Kaysen v. Federal Insurance Co.*, 268 N.W.2d 920 (Minn.1978), where a corporate officer sought uninsured motorist coverage under a policy issued to his corporate employer, we held that the policy definition of insured was contrary to the No-Fault Act, section 65B.49, subd. 4, because the policy failed to make uninsured motorist coverage coextensive with the comprehensive liability coverage as is required by the No-Fault Act.   This result suggests that if uninsured motorist coverage is to be coextensive with the no-fault coverage provided by the No-Fault Act, then the definitional section of "insured" in the No-Fault Act should apply to uninsured motorist coverage.

Respondent Burgraff, on the other hand, quotes our dictum in *Gudvangen v. Austin Mutual Insurance Co.*, 284 N.W.2d 813, 817 (Minn.1979), *appeal dismissed*, 444 U.S. 1062, 100 S.Ct. 1002, 62 L.Ed.2d 745 (1980), where, on rehearing, we said:

> [I]n adopting the concept of no-fault insurance into the Minnesota statutes, the legislature intended no change in the law insofar as uninsured motorist insurance

protection is concerned.   The statutes dealing [with] uninsured motorist insurance were intended to be incorporated intact.   Since decisions of this court prior to no fault, cited in the main opinion, make it clear that the protection of the uninsured motorist statutes applied to persons and not vehicles, appellant would be covered.

*See also American Motorist Insurance Co. v. Sarvela*, 327 N.W.2d 77, 78 (Minn. 1982) (the provisions for underinsured motorist coverage, existing before the No-Fault Act, "were incorporated into the No-Fault Act unchanged").   From this respondent Burgraff argues that the definitional section of the No-Fault Act should not be read into uninsured motorist coverage.   It must be remembered, however, that the quotations from *Gudvangen* and *Sarvela* are statements of what this court deemed to be the legislature's intent with respect to the issues presented in those two cases. These statements were not meant to preclude further inquiry into legislative intent with respect to different issues.   Particularly is this so where, as Professor Steenson has noted, coordinating uninsured motorist coverage with the Act creates problems of "definitional consistency."   M. Steenson, *Minnesota No-Fault Automobile Insurance* 125 (1982).

Curiously enough, prior to the No-Fault Act, uninsured motorist coverage had no statutory definition for "insured" except as the term was mentioned indirectly.[2]   Even this oblique reference was repealed when

---

1.  Minn.Stat. § 65B.43, subd. 5 (1982), reads in its entirety:

> Subd. 5.   "Insured" means an insured under a plan of reparation security as provided by sections 65B.41 to 65B.71, including the named insured and the following persons not identified by name as an insured while (a) residing in the same household with the named insured and (b) not identified by name in any other contract for a plan of reparation security complying with sections 65B.41 to 65B.71 as an insured:
> (1) a spouse,
> (2) other relative of a named insured or
> (3) a minor in the custody of a named insured or of a relative residing in the same household with a named insured.

A person resides in the same household with the named insured if that person usually makes his home in the same family unit, even though he temporarily lives elsewhere.

2.  The original uninsured motorist statute's only reference to who was an insured occurred in its definition of "Policy of automobile liability insurance."   Such a policy "means a policy delivered or issued for delivery in this state, insuring a natural person as named insured, and any relative or relatives of the named insured who is a resident of the same household covering automobiles owned by the insured * * *."   Minn. Stat. § 65B.22, subd. 1 (1971).

uninsured motorist coverage was incorporated in 1974 into the No-Fault Act, leaving instead the definition of "insured" in section 65B.43, subd. 5 (1982). It seems to us, in these circumstances, that the legislative intent expressed in section 65B.43, subd. 5, that the No-Fault definition of insured is the same for uninsured motorist coverage, is both explicit and controlling.

Although this court has never before examined whether the definition of "insured" in the No-Fault Act applies to uninsured motorist coverage,[3] respondent Burgraff argues that since our prior decisions clearly favor stacking of coverages, to permit application of the statutory definition here would violate that favored policy since stacking would thereby be denied in this case. But to state that stacking is to be favored is only the beginning, not the end, of our inquiry. Moreover, the issue here is not, strictly speaking, a stacking issue. The question of who is an "insured" goes to whether there is coverage, not to whether coverages found to exist should be stacked. Thus, in *Bock v. Mutual Service Casualty Insurance Co.*, the case consolidated with and reported in *Wasche v. Milbank Mutual Ins. Co.*, 268 N.W.2d 913 (Minn.1978), we denied no-fault PIP benefits because of the policy definition of insured. There we held that the section 65B.43, subd. 5, definition of insured precluded Bock from being an insured under his father's policy where Bock was identified by name in his own policy. In other words, this court applied the statutory definition of insured even though the result

was to deny stacking of benefits under the father's policy.

We hold, therefore, that the section 65B.43, subd. 5, definition of insured in the No-Fault Act applies to *uninsured* motorist coverage.

2. This leads, then, to the next question: Should the same statutory definition of insured govern *underinsured* motorist coverage? We think so.

While it may not necessarily follow that the statutory definition of "insured" for uninsured motorist coverage should also apply to underinsured coverage, the proposition does have merit from the standpoint of "definitional consistency." The No-Fault Act is now silent about underinsured motorist coverage. But in two recent cases we implicitly held that the fact that an offer of underinsured motorist coverage is not mandatory or that the coverage itself is not required to be provided, as it is for uninsured coverage, does not mean that uninsured and underinsured coverages must be treated differently. *See American Motorist Insurance Co. v. Sarvela*, 327 N.W.2d 77 (Minn.1982); *Holman v. All Nation Insurance Co.*, 288 N.W.2d 244 (Minn.1980).

More importantly, we discern from a review of the statutory history a legislative intent that the No-Fault definition of "insured" in section 65B.43, subd. 5, is intended to govern underinsured coverage. Unlike uninsured coverage, the original underinsured coverage statute contained its own definition of "insured." *See* Minn.Stat. § 65B.24, subd. 4 (1971).[4] This definition

---

**3.** *Van Tassel v. Horace Mann Mutual Insurance Co.*, 296 Minn. 181, 207 N.W.2d 348 (1973), held that an insured who had uninsured motorist coverages on several automobiles with separate premiums paid for each can stack these coverages and that an "other insurance" or an excess insurance clause in the policy will not defeat stacking. *Integrity Mutual Insurance Co. v. State Automobile & Casualty Underwriters Insurance Co.*, 307 Minn. 173, 239 N.W.2d 445 (1976), held that the No-Fault Act's priority levels for PIP benefits did not govern uninsured motorist benefits but that the order of stacking of uninsured motorist benefits is based on "closeness to the risk." *Gudvangen v. Austin Mutual Insurance Co.*, 284 N.W.2d 813 (Minn.1979), held that

a limited definition of "motor vehicle" in the No-Fault Act, which excluded motorcycles, did not apply to uninsured motorist coverage, and *American Motorist Insurance Co. v. Sarvela*, 327 N.W.2d 77 (Minn.1982), held the same as to underinsured motorist coverage. None of these cases suggest that a definition of "insured" in the No-Fault Act, which explicitly applies to uninsured motorist coverage, should nevertheless not be applied.

**4.** Minn.Stat. § 65B.24, subd. 4 (1971), provided:
   "Insured" means any person other than the named insured who is in or upon, entering into, or alighting from, the automobile insured and described in the policy with the

was different than that now found in section 65B.43, subd. 5, and did not contain the exclusionary language about relatives which is at issue here. In 1974, when the No-Fault Act was enacted, this underinsured motorist coverage was incorporated into the Act as a supplementary, mandatorily-offered coverage. *See* Minn.Stat. § 65B.49, subd. 6 (1974). At the same time, however, the legislature repealed the original definition of "insured" for underinsured coverage found in section 65B.24, subd. 4 (1971), leaving as the only statutory definition of "insured" the No-Fault Act's definition in section 65B.43, subd. 5 (1974). And this definition was stated to apply for the purposes of the Act "except where the context clearly indicates a different meaning."

Considering this clear indication of legislative intent, and having in mind the need for "definitional consistency" for uninsured and underinsured coverages, we hold that the underinsured motorist coverage, as supplemental coverage to a plan of reparation security under the No-Fault Act, is governed by the No-Fault definition of "insured" in section 65B.43, subd. 5 (1982).

## II.

▉ The next issue is whether the definition of "relative" as written in Aetna's policy is invalid because it restricts underinsured motorist coverage to less coverage than is afforded under the statutory definition of insured in the No-Fault Act. The trial court ruled that the policy definition was unduly restrictive, resulting in an exclusion broader than the No-Fault Act permits, and thus held the policy exclusion invalid. We agree.

Aetna's policy excludes from coverage a relative of the named insured who resides in the same household as the named insured *if* that relative "owns a private passenger automobile." On the other hand, the No-Fault Act, section 65B.43, subd. 5,

excludes the relative *if* that relative is "identified by name in any other contract for a plan of reparation security complying with sections 65B.41 to 65B.71 as an insured."

In this case, the policy exclusion and the statutory exclusion are coextensive, *as applied,* since Mary Jo Burgraff both owns a car and is the named insured in a policy issued on the car. Nevertheless, the trial court found that the policy exclusion, *as written,* was broader than the statutory exclusion and that, as a matter of public policy, Aetna's exclusion based on car ownership instead of insurance policy ownership was invalid. Since, at least ordinarily, a relative who owns a car is required to have a plan of reparation security on that car, *see* section 65B.48, and since the auto insurance policy will be issued to the owner of that car as the named insured, there would seem to be little difference between the two definitions of "relative." We do not, however, write on a clean slate, since we have discussed this question in two prior cases, *Anderson v. Illinois Farmers Insurance Co.,* 269 N.W.2d 702, 706 (Minn. 1978), and *Rosenberger v. American Family Mutual Insurance Co.,* 309 N.W.2d 305, 310 (Minn.1981).

*Anderson* involved a 1974 car accident, where the plaintiff, a resident of her stepfather's household, sought uninsured motorist benefits under her stepfather's policy. The policy said a relative was an additional insured "provided neither such relative nor his spouse owns an automobile." At the time of the accident, however, section 65B.23, subd. 1 (1971) (repealed 1974), prohibited any policy from containing "an exclusion of liability for damages for bodily injury solely because the injured person is a resident or member of an insured's household or related to the insured by blood or marriage." Plainly, the policy provision was at odds with both the letter and spirit of the statute favoring coverage

---

express or implied permission of the named insured or the person operating the automobile with the express or implied consent of the named insured, *and also means members of*

*the household of the named insured* and a pedestrian struck by the insured vehicle. (Emphasis supplied.)

for relatives, and we held the overbroad policy exclusion void. We pointed out, however, that the law had been expressly changed since the plaintiff's accident to exclude as relatives persons insured under another policy, and we intimated our decision might be different under the new law. 269 N.W.2d at 707.

In 1981 we decided *Rosenberger*, which involved a 1977 car accident covered by the new No-Fault Act provision, section 65B.43, subd. 5 (1982). There, again, a plaintiff sought uninsured motorist benefits as an additional insured under her stepfather's policy. Plaintiff owned an automobile but had failed to insure it. The stepfather's policy excluded from the definition of insured any "person who, or whose spouse, owns a private passenger automobile." Citing *Anderson* as controlling, but without mentioning the intimation in that opinion that our decision might be different under the new law, we again invalidated the policy exclusion as overbroad. Jean Rosenberger, residing in her stepfather's household but not identified by name in any plan of reparation security, plainly was not excluded under a literal reading of section 65B.43, subd. 5, and to have nevertheless excluded her simply because she owned a car, as the policy provision purported to do, would have conflicted with the provision of the No-Fault Act.

*Anderson*, of course, is not in point since it was decided under a different statutory definition of "relative." But *Rosenberger*, we think, must be deemed controlling. Under *Rosenberger*—under the same policy exclusion and the same statute as here—a relative who owns a car and fails to insure it is entitled to coverage. To now say that a relative who owns a car but does insure it is to be denied coverage would be incongruous and unfair. As written, the policy exclusion is overbroad and misleading. For whatever reason, the insurer elected to use language in its policy exclusion which does not track the statute. It seems to us, as a

matter of public policy, that it is preferable in this instance to refuse to rewrite the policy exclusion, since judicial rewriting of the policy to save the exclusion would only condone insurers' drafting overbroad policy exclusions.

Consequently, we hold that Aetna's policy definition of "relative," which excludes a relative who owns a private passenger automobile, conflicts with the definition of "relative" in Minn.Stat. § 65B.43, subd. 5 (1982), and that the policy exclusion as written is invalidated; that Mary Jo Burgraff is, therefore, not excluded from coverage for underinsured motorist benefits under her father's policy.

Affirmed.

KELLEY, Justice (dissenting).

I respectfully dissent. While I concur in the majority's conclusion in Section I of the opinion that the definition of "insured" contained in Minn.Stat. § 65B.43, subd. 5 (1982) applies to the determination of the existence of uninsured automobile insurance coverage, I disagree with its conclusion that after April 12, 1980 the definition applies to the determination of the existence of underinsured coverage.

Clearly, the legislature can mandate coverage provisions that must appear in insurance policies. Indeed, it has done so with respect to automobile insurance. Minn. Stat. § 65B.49, subds. 1, 2, 3 and 4 (1982).[1] But if the legislature has not mandated that certain definite insurance coverages must appear in policies, or that certain exclusions may not be inserted in policies, the insured and the insurer may enter into any insurance contract to which they mutually agree. "Parties to insurance contracts, as in other contracts, absent legal prohibition or restriction, are free to contract as they see fit, and the extent of liability of an insurer is governed by the contract they enter into." *Bobich v. Oja*, 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960) (footnote omitted); *see also Forcier*

---

**1.** Historically, it has done so with respect to other types of insurance contracts. *See, e.g.,* Minn.Stat. § 61A.24 (1982) (life insurance); Minn.Stat. § 62A.03 (1982) (accident and health insurance); Minn.Stat. § 62B.06 (1982) (credit life and accident and health insurance).

*v. State Farm Mutual Automobile Insurance Co.,* 310 N.W.2d 124, 126–28 (Minn. 1981) (supplemental automobile liability insurance).

Since April 12, 1980, the effective date of repeal of Minn.Stat. § 65B.49, subd. 6 (1978), the legislature has not mandated the compulsory offer of underinsured motorist coverage in automobile insurance policies. From 1974 to that date, the statute did mandate the offer of such coverage. Although conceding that it does not necessarily follow that the statutory definition of "insured" for uninsured motorist coverage should also apply to underinsured coverage, the majority discerns from the legislative history a legislative intent that the definition of "insured" as found in section 65B.43, subd. 5 govern underinsured coverage. I have difficulty in ascertaining such legislative intent merely because in 1974 the legislature repealed Minn.Stat. § 65B.24, subd. 4 (1971), the section defining "insured" as applicable to underinsured motorists. It seems to me that was logical inasmuch as in 1974 the legislature was mandating, as part of a comprehensive reorganization of the automobile liability insurance scheme—the No-Fault Act—, that underinsured motorist coverage be offered as well as the other coverages mandated in section 65B.49. It just made sense to have the same definition of "insured" apply to all of the mandated coverages—what the majority has labeled "definitional consistency." Where I part with the majority is that I cannot take the next step which holds that, notwithstanding the fact that the legislature has repealed the mandatory offer of underinsured motorist coverage, nonetheless the section 65B.43, subd. 5 definition of "insured" was intended by the legislature to apply to "other benefits and coverages" (Minn.Stat. § 65B.49, subd. 7)—in this instance, underinsured motorist coverage.

I find nothing in the history of the legislative action with respect to underinsured motorist coverage to demonstrate that it intended that the definition of "insured" for optional underinsured coverage should be co-extensive with the statutory definition of "insured" for the mandatory coverages contained in that chapter.

Mary Jo Burgraff, a relative of the named insured, resided in the same household as the named insured, owned a private passenger automobile, and was identified by name in another contract for a plan of reparation security complying with Minn. Stat. §§ 65B.41 to 65B.71 (1982) as an insured. Thus, she would be excluded from her father's policy coverage for underinsured motorists under the statute. Minn. Stat. § 65B.43, subd. 5 (1982). Nevertheless, the majority concludes she is entitled to such coverage merely because the insurer failed to print in the policy exclusion the statutory words is "identified by name in any other contract for a plan of reparation security complying with sections 65B.41 to 65B.71 as an insured," Minn.Stat. § 65B.43, subd. 5 (1982), although, in fact, that was the case and although she was required by law to have such a plan of reparation security. Minn.Stat. § 65B.48 (1982).

In doing so, the majority relies upon *Rosenberger v. American Family Mutual Insurance Co.,* 309 N.W.2d 305 (Minn.1981), as being dispositive. I disagree. The two cases are dissimilar. The main issue in *Rosenberger* related to whether Jean Rosenberger was a resident in the named insured's home for the purpose of collecting *uninsured* motorist benefits. A bare majority of the court affirmed a trial court determination that she was. Although she owned her own automobile, she did not come within the statutory exclusion because she was not identified by name in any other contract for a plan of reparation. Therefore, to have applied the policy exclusion attempting to exclude a resident who owns an automobile would have defeated the policy of the No-Fault Act.[2] In the

---

2. As authority for this holding, the court cited *Anderson v. Illinois Farmers Ins. Co.,* 269 N.W.2d 702 (Minn.1978). *Anderson,* however, was decided under Minn.Stat. § 65B.23, subd. 1 (repealed 1974), which prohibited an exclusion of liability solely because the injured person was a member of the household or related to the named insured. In *Anderson,* however, we

present case that is not true. By statutory definition, Mary Jo Burgraff is not an insured—no matter what language of exclusion was used in the policy. The perceived public policy of the requirement of the No-Fault Act for underinsured liability insurance is satisfied. *See Anderson v. Illinois Farmers Insurance Co.*, 269 N.W.2d 702, 705 (Minn.1978). Accordingly, I would reverse.

AMDAHL, Chief Justice. I join in the dissent of Justice Kelley.

PETERSON, Justice. I join in the dissent of Justice Kelley.

COYNE, Justice. I join in the dissent of Justice Kelley.

noted that the no-fault statute, Minn.Stat. § 65B.43, subd. 5 (1982), had altered the definition of relative to exclude as relatives persons insured under another policy of insurance. We there intimated that the restriction in the no-fault law "may be explained by the requirement of universal liability insurance." *Id.* at 705.