**CITY OF WILLMAR, Petitioner, Respondent,**

v.

**SHORT–ELLIOTT–HENDRICKSON, INC., Petitioner, Appellant,**

**Adolfson & Peterson, Inc., Respondent,**

**Clow Corporation, Respondent.**

**No. C7–90–1373.**

Supreme Court of Minnesota.

Oct. 4, 1991.

Mark J. Heley, Thomas L. Adams, Meagher & Geer, Minneapolis, for appellant.

Scott A. Smith, Joy M. Waldera, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for City of Willmar.

Steven R. Schwegman, Quinlivan, Sherwood, Spellacy & Tarvestad, P.A., St. Cloud, for Adolfson & Peterson, Inc.

Kevin Quigley, Oppenheimer, Wolff & Donnelly, St. Paul, for Clow Corp.

TOMLJANOVICH, Justice.

In the mid–1970's, the City of Willmar employed Short–Elliot–Hendrickson, Inc. (SEH) to recommend and design improvements to the City's waste water treatment facility. SEH recommended the City replace its trickling filter system with a series of rotating biological contactors (RBC's)—large cylinders that rotate bacteria into and out of waste water. The City accepted SEH's recommendation and construction began in 1981. Clow Corpora-

tion was selected by the general contractor[1] and approved by SEH to manufacture the RBC's.

Construction on the improvements was substantially completed by September 1982. Shortly after the City began operating the facility, however, it received complaints about offensive odors from nearby residents. Further, the RBC units failed to achieve performance standards guaranteed by Clow when initially tested in November 1982.

SEH and Clow were involved in subsequent efforts to solve the odor problem and to achieve acceptable levels of waste water treatment, including the installation of additional equipment recommended and provided by Clow in May 1983. Although the RBC units again failed when tested in the spring of 1983, they performed at acceptable levels when tested the following July.

On November 3, 1983, the Willmar City Engineer submitted a status report on the treatment facility indicating the odor problem seemed to stem from the presence of too little dissolved oxygen in the RBC units. Subsequently, SEH retained Lawrence Breimhurst, a professional engineer, to evaluate the cause of the odors at the treatment facility. Breimhurst concluded the periodic odors resulted from overloaded RBC units, and that adjustments in the existing equipment could control the problem.

Although the odor emanating from the treatment facility abated somewhat during the spring of 1984, it worsened the following summer. In August, SEH again informed the City that the odor was produced by insufficient dissolved oxygen in the RBC units, owing in large part to the content and volume of waste being released by a local poultry processing plant. SEH recommended that the City enforce its existing ordinance requiring industrial sewage releases be monitored, permit SEH to conduct a week-long training session for treatment staff personnel, and add an air diffusion system to its RBC units in order to provide those units more dissolved oxygen.

On November 26, 1984, the City authorized SEH to design an aeration system and other additional equipment for the RBC units and to prepare a grant application to the State Pollution Control Agency for partial funding of these additions. The City informed SEH that it intended to go forward with installing the proposed aeration system irrespective of whether the grant application was accepted because of its concern about controlling the odor problem.

Although the State Pollution Control Agency denied the City's grant application, the City installed the aeration system at its own expense.

SEH continued as consulting engineers to the City through the winter and spring of 1986. During the summer, however, the City concluded the aeration system had not solved the treatment facility's odor problem. In August, the City retained Bonestroo, Rosene, Anderlik & Associates, Inc. (BRA), to conduct an engineering evaluation of the treatment facility. BRA delivered its evaluation to the City on February 13, 1987. The report specifically addressed the facility's odor problem, indicating that overloaded RBC units constituted one of four sources generally responsible for producing odor in a waste water treatment facility. It also suggested several alternative improvement strategies, each involving some change in the existing RBC system.

The City subsequently contracted for additional improvements, including installation of waste screens at the poultry plant and at the facility, installation of a new trickling filter, and construction of new odor control tanks. BRA estimated the cost of these improvements to be $2,600,000.00. The City indicates construction on the facility was completed in 1989 at a cost of more than $3 million.

In October 1987, the City served a complaint on SEH alleging the company was negligent in designing improvements to the

1. Adolfson and Peterson was the general contractor for the waste water facility improvements. Although originally a party to this suit, it has settled with the City and is not part of this appeal.

City's waste water treatment facility. The following month, the City also served a complaint on Clow Corporation alleging Clow was negligent in manufacturing the RBC units installed at the treatment facility and that Clow breached express and implied warranties in connection with the sale of those units.

In answer to the City's allegations, both SEH and Clow argued that the City did not undertake its suit within the two-year period permitted by Minn.Stat. § 541.051 (1987). After discovery was conducted, both SEH and Clow moved the District Court for the Eighth Judicial District, the Honorable John C. Lindstrom presiding, for summary judgment. The district court granted summary judgment for both defendants, concluding that the City's actions against each were time barred.

The City appealed the district court's decision to the court of appeals. With respect to the City's claim against Clow, the court concluded that section 541.051 barred the City's claim from going forward. As to the claim against SEH, however, the court held that the City raised material issues of fact regarding its reasonable reliance on statements made by SEH, requiring remand for trial on the issue of equitable estoppel.

**I**

Minn.Stat. § 541.051, Subd. 1 (1986), the provision in effect at the time the City served its summons and complaint on SEH, provided that:

> Except where fraud is involved, no action * * * to recover damages for any injury to property, real or personal * * * *arising out of the defective and unsafe condition of an improvement to real property* * * * shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property or against the owner of the real property *more than two years after discovery thereof* * * *.

*Id.* (emphasis added). In *Wittmer v. Ruegemer*, 419 N.W.2d 493 (Minn.1988), this

court concluded that section 541.051 established discovery of the defective condition, *not* discovery of the damage or injury it caused, as the point at which a cause of action accrued and the limitation period began. *See id.* at 496.

Subsequent to the date on which the City began its action against SEH, the legislature amended section 541.051 to read:

> no action * * * arising out of the defective and unsafe condition of an improvement to real property * * * shall be brought * * * more than two years after discovery *of the injury* * * *.

Act of April 24, 1988, ch. 607, § 1, Subd. 1(a), 1988 Minn.Laws 680, *codified at* Minn. Stat. § 541.051, Subd. 1(a) (1988) (emphasis added). In addition, a new provision was attached, stating that "[f]or purposes of paragraph (a), a cause of action accrues upon discovery of the injury * * *." Act of April 24, 1988, ch. 607, § 1, Subd. 1(b), 1988 Minn.Laws 681, *codified at* Minn.Stat. § 541.051, Subd. 1(b) (1988).

The amendment was entitled "[a]n act relating to civil actions; *clarifying the statute of limitations* for damages based on services or construction to improve real property * * *," and stated that it applied "to matters *pending on* or instituted on or after the effective date." Act of April 24, 1988, ch. 607, § 3, 1988 Minn.Laws 681 (emphasis added).

The City contends that its action against SEH is governed by the 1987, "discovery of defect" version of section 541.-051, despite the legislature's express direction that the 1988, "discovery of injury" amendment is to apply retroactively and merely "clarified" the existing provision. We agree.

In October, 1987, when the City initiated its action against SEH, this court's interpretation of section 541.051 articulated in *Wittmer* remained in effect. Despite language indicating that the 1988 amendment was merely a "clarification," it effectively overruled *Wittmer* by establishing the discovery of an injury, rather than a defective condition, as the point at which the limitation period begins to run.

Although this court has held that a statute of limitations may be altered without violating the guarantee of due process, *see Donaldson v. Chase Securities Corp.*, 216 Minn. 269, 275, 13 N.W.2d 1, 4 (1943), *aff'd*, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945), it has also concluded that where a statutory period is shortened, a "reasonable time" must be accorded within which those with accrued causes of action may comply. *See Wichelman v. Messner*, 250 Minn. 88, 108–09, 83 N.W.2d 800, 817 (1957) ("reasonable time" cannot be so brief as to amount to practical denial of opportunity to pursue claim); *see also Kozisek v. Brigham*, 169 Minn. 57, 60, 210 N.W. 622, 623 (1926) (alteration in statute of limitations subject to "universal rule" that it cannot cut off existing cause of action without providing reasonable period in which to assert it). In this instance, the City had no opportunity to comply with the 1988 amendment, as it was approved approximately six months after the City served its summons and complaint on SEH. Therefore, the amended statute cannot be applied to the City's claims.

SEH mistakenly contends that this court's decision in *Gudvangen v. Austin Mut. Ins. Co.*, 284 N.W.2d 813 (Minn.1979), *appeal dismissed*, 444 U.S. 1062, 100 S.Ct. 1002, 62 L.Ed.2d 745 (1980), supports retroactive application of the amendment. In *Gudvangen*, this court concluded that a legislative amendment expanding the definition of "uninsured motor vehicle" to specifically include motorcycles was a mere clarification of existing law. The court did indicate the title to the amendment stated it "clarif[ied] certain ambiguous provisions in the Minnesota no-fault automobile insurance act," *id.* at 817 (quoting Laws 1977, c. 266), and noted that "[t]he title of an act is indicative of legislative intent." *Id.* at n. 7 (citing *State v. Northwestern States Portland Cement Co.*, 258 Minn. 162, 103 N.W.2d 225 (1960)). But the court further explained that the amendment only "reworded and clarified the statutes to comply with what the law already was as interpreted by earlier decisions of this court." *Id.* (opinion on rehearing).

In contrast, the amendment at issue here contravened this court's pre-existing interpretation of section 541.051 and significantly altered the statute of limitations in effect when the City initiated its suit. We therefore conclude that section 541.051 as amended is inapplicable to the City's claim against SEH.

II

■ The City contends it was unaware of the defective condition of the improvements to its waste water treatment facility until it received the engineering evaluation completed by BRA in February 1987. Both the district court and the court of appeals concluded that the City knew or had reason to know about the claimed defects in the facility well in advance of receiving the BRA evaluation. We conclude that the City raised material issues of fact with respect to when it knew or had reason to know of the alleged defects and therefore remand the issue for trial.

■ "On appeal from summary judgment, it is the function of the appellate court to determine whether genuine issues of material fact exist and whether the trial court erred in its application of the law." *Hunt v. IBM Mid Am. Employees Fed. Credit Union*, 384 N.W.2d 853, 855 (1986) (citation omitted). In the context of section 541.051, summary judgment is inappropriate "if reasonable minds may differ about the time of discovery or when the defective and unsafe condition should have been discovered in the exercise of reasonable diligence * * *." *Wittmer*, 419 N.W.2d at 497.

In *Wittmer v. Ruegemer*, plaintiffs claimed that, despite having observed a gradually increasing area of standing water, dead grass, and sinking ground in the area around their septic tank, they did not discover the septic system was defective until, over two years after they first noticed a wet spot on the ground, a consultant advised them a new septic system was necessary. *See id.* at 495. The trial court granted summary judgment for defendants, reasoning that the statute of limitations began to run as soon as plaintiffs

discovered the wet area and expired before they were informed of the need for a new septic system. *See id.* In reversing and remanding for trial, this court explained that where there has not been sudden, calamitous damage due to a hidden defect—as where a wall suddenly collapses—fact issues may well exist as to when the underlying defect was, or should have been, discovered. *See id.* at 497.

The City's position here is similar to that of the plaintiffs in *Wittmer.* Although the City clearly was aware of the odor produced by the treatment facility almost as soon as the improvements designed by SEH became operational, it was consistently advised by SEH, by SEH's consultant Lawrence Breimhurst, and by its own engineer that the odor problem was not the result of faulty design.

Throughout the period that SEH served in the City's employ, it never waivered from its position that the odor problem was directly linked to excessive industrial waste releases, and that the aerator system it recommended was intended to assist the RBC units in handling those releases as well as to increase the overall treatment capacity of the facility. Further, SEH's retained consultant Lawrence Breimhurst advised the City that the facility was properly designed and constructed and that adjustments to existing equipment would adequately control the odor. In addition, the Willmar City Engineer reported in November 1983 that sufficient facts did not exist on which to determine whether the odor problem was the result of design problems attributable to SEH. In its 1984 Annual Report, the City Engineering Department explained that the RBC units had been identified as the source of the odors, but did not indicate that flaws in the design or operation of the RBC's were involved. Finally, the City retained BRA in February 1987 for the express purpose of determining whether the plant was adequately designed to treat the City's waste water and whether corrective measures in the facili-ty's design were required to alleviate the problems it was experiencing.

Taken together, this evidence does create a question of fact as to whether the City discovered or had reason to discover its treatment facility might be defective more than two years before beginning its action against SEH in October 1987. Although the City was apparently well aware the facility was not operating as planned beginning in the summer of 1983, it was consistently advised that the facility's problems were not the products of a defective design.

This court explained in *Hydra–Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913 (Minn. 1990), that "[a] party need not know the details of the evidence establishing the cause of action, only that the cause of action exists." *Id.* at 919. When a party has this knowledge, yet chooses not to avail itself of the means provided for preserving and pursuing its claim, it is at fault. *Id.* (citations omitted). The record before this court does not clearly demonstrate that the City discovered the grounds for its cause of action against SEH—negligent design of improvements to its treatment facility resulting in the release of obnoxious odors—more than two years before it formally commenced that action. Further, both the district court and the court of appeals only briefly addressed the City's claim that genuine issues of material fact remained; neither court articulated why evidence indicating that, beyond being without detailed knowledge of the facility's potential shortcomings, the City was consistently advised its facility had been properly designed was insufficient to create an issue for trial.

We therefore remand the City's claims against SEH to the district court because the City adequately demonstrated a genuine issue of fact remains as to whether it actually discovered or had reason to discover alleged defects in the design of its treatment facility more than two years prior to initiating its action.[2]

---

2. Because of our disposition of the claims against SEH, it is unnecessary to reach the issue of equitable estoppel. We do however conclude that the record does not support the court of appeals' determination that, as a matter of law, the City acted with due diligence in initiating its

## III

The City contends that its action against Clow for breach of express and implied warranties falls within the four-year statute of limitations applicable to actions for breach of a contract for the sale of goods. The district court concluded that Clow was the supplier of component parts incorporated into an improvement to real property, and that the City's claims therefore fell within the two-year statutory period applicable to improvements to real property. The court of appeals agreed that the City's claims against Clow were governed by section 541.051's two-year statute of limitations, but on the ground that those claims arose out of a contract for services, rather than for goods. We agree with the City that its warranty claims fall within the statute of limitations applicable to contracts for the sale of goods and accordingly dismiss the City's claims against Clow as untimely.

Minn.Stat. § 336.2–725 (1990) provides that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." Section 336.2–725 applies to transactions in goods. Minn.Stat. § 336.2–102 (1990). " 'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (article 8) and things in action." Minn.Stat. § 336.2–105(1) (1990). The City contends that because Clow's contract with Adolfson & Peterson was a contract for the sale of "goods," its warranty claims arising out of that contract are governed by the four-year statute of limitations provided in section 336.2–725.[3]

suit against SEH. The district court should therefore disregard the court of appeals' resolution of that issue on remand.

**3.** We reject the court of appeals' conclusion that the contract between the City and Clow related to the provision of services rather than to the sale of goods. This court has adopted the "predominant factor" test in determining whether a contract that involves both goods and services falls within Article 2 of the Uniform Commercial Code as adopted in Minnesota. *See Valley*

Clow argues that the City's claims against it are governed by the two-year statute of limitations provided in Minn.Stat. § 541.051 (1990):

> [e]xcept where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal, * * * arising out of the defective and unsafe condition of an improvement to real property * * * shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of the construction or construction of the improvement to real property * * * more than two years after discovery of the injury * * *.

It contends that in supplying the RBC units, it furnished materials for an improvement to real property.

In *Valley Farmers' Elevator v. Lindsay Bros. Co.*, 398 N.W.2d 553 (Minn.1987), this court concluded that "[t]he time for testing whether a transaction is a sale of goods— i.e., a sale of movable things—is at the time of identification to the contract * * *." *Id.* at 556. Considering whether a grain storage and drying system constituted an improvement to real property for purposes of section 541.051, the court explained that "[e]ven if by attaching moveable objects so that upon completion of the contract they are immoveable [and, thus, arguably an improvement to real property], section 541.051 is only a general statute of limitations prescribing the time within which [common law claims might be asserted]." The City therefore correctly asserts that, in light of *Valley Farmers'*, objects that are moveable when identified to a contract for sale are "goods" for purposes of breach of warranty claims even though subsequently in-

*Farmers' Elevator v. Lindsay Bros.*, 398 N.W.2d 553, 556 (Minn.1987), *overruled on other grounds*, *Hapka v. Paquin Farms*, 458 N.W.2d 683 (Minn.1990). Applying the predominant factor test to the contract at issue, in which Clow agreed to provide "all the material necessary to complete" the RBC units designed by SEH, we find no reason to classify that contract as one for the provision of services rather than for the sale of goods.

corporated into an improvement to real property.

We disagree with the district court's conclusion that *Valley Farmers'* must be limited strictly to its own facts, in essence creating a "grain elevator exception" to section 541.051. Nothing in the relevant portion of that decision suggests it is to apply solely to contracts involving grain elevators. Further, the court did not articulate any rationale for creating a distinction between grain elevators and all other real property. Rather, the decision indicates that any claim arising out of a contract for the sale of goods is governed by the four-year statute of limitations, even when the goods are subsequently incorporated into an improvement to real property. *See Valley Farmers'*, 398 N.W.2d at 556.

■ The 1988 amendment to section 336.2–725 does not alter our conclusion. That amendment expressly states that the four-year statutory period does not apply "to actions for the breach of any contract for sale of a grain storage structure that is an improvement to real property, which actions shall be subject only to the statute of limitations set forth in section 541.051." Act of May 19, 1989, ch. 187, § 1(4), 1989 Minn.Laws. 478 *codified at* Minn.Stat. § 336.2–725(4) (1990). While the language of the amendment unambiguously removes claims related to contracts for the sale of grain storage systems from the scope of section 336.2–275, it does not, as Clow argues, reach out to incorporate *all* claims regarding improvements to real property. Rather, it creates a very narrow exception to section 336.2–725 as interpreted in *Valley Farmers'* applicable only to contracts involving the sale of grain storage systems.[4]

## IV

Minn.Stat. § 336.2–725(2) (1990) provides:

A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Minn.Stat. § 336.2–503(1) (1990) states that "[t]ender of delivery requires that the seller put and hold conforming goods at the buyer's disposition * * *."

Neither the district court nor the court of appeals considered when the City's cause of action accrued for purposes of section 336.2–725 because both courts concluded that provision did not apply to the City's claims against Clow. However, the record before this court is sufficient to permit the conclusion that no genuine issue of material fact exists as to when the City's cause of action against Clow accrued, and that the City initiated its action after the applicable limitation period expired.

This court has not previously interpreted "tender of delivery" as used in section 336.2–725 in the context of an action against a supplier of component parts incorporated into a larger system. Adopting the City's position that tender of delivery does not occur until the "overall system" is accepted by the purchaser, however, would be unreasonable. Such a rule would subject a supplier in Clow's position to a lengthy period of potential liability dependent on construction delays completely outside its control, as well as on delays in the purchaser's decision to accept and tender payment for the entire system. As the

4. As Clow indicates, subsequent to our decision in *Valley Farmers'*, this court determined, in answer to a certified question from the federal district court, that a 71-ton overhead rail crane installed at a mining operation was an improvement to real property within the meaning of section 541.051. *See Sartori v. Harnischfeger Corp.*, 432 N.W.2d 448 (Minn.1988). However, because *Sartori* involved the narrow certified question of whether the equipment involved

was indeed an "improvement to real property" under Minnesota law, this court did not go on to the second step mandated by *Valley Farmers'*—that is, determining whether the claim in question arose out of a contract for the sale of goods, irrespective of whether those goods eventually became an improvement to real property. Thus, *Sartori* does not undermine the conclusion reached in *Valley Farmers'*.

facts of this case illustrate, that period could extend well beyond four years from the actual date of delivery.

■ Similarly, Clow's contention that the City's cause of action accrued immediately upon delivery of the RBC units to the job-site is equally unreasonable. Because the City's claim is based on its allegations that the RBC's failed to meet guaranteed performance standards, it had no ground upon which to base an action for breach of warranty until the RBC's were installed and operational.

In *City of New York v. Pullman Inc.*, 662 F.2d 910 (2d Cir.1981), *cert. denied sub nom. Rockwell Int'l Corp. v. City of New York*, 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982), the Second Circuit concluded that "tender of delivery" for purposes of a statute of limitations identical to Minn.Stat. § 336.2–725 (1990) did not occur when ten subway cars of a total 754 ordered were delivered to the City for testing and approval. *Id.* at 918–19. The court reasoned that because the contract at issue required the ten sample cars to pass an on-line inspection before conforming to contractual requirements, mere delivery of the cars did not constitute tender of conforming goods. *Id.* at 919 (citing definition of "tender of delivery" identical to that in Minn.Stat. § 336.2–725 (1990)). It therefore concluded that the limitations period did not begin to run until the required tests of the sample cars were performed. *Id.*

A similar rule is appropriate here. Until the RBC units were installed and initially tested, there was no tender of delivery of goods conforming to the relevant contractual provisions and no breach of Clow's guarantee to provide units that would satisfy specified performance standards. However, once the RBC's failed to meet the stated effluent requirements, the City's cause of action accrued and the four-year statute of limitations began to run. The City itself indicates, and Clow does not dispute, that installation of the RBC units was substantially complete by September 1982 and that those units "failed to pass required contractual performance guarantees" in November 1982. The district court found that the City served a summons and complaint on Clow in November 1987, approximately five years after the City's cause of action for breach of warranty accrued. The City's claims against Clow are therefore barred by the four-year statute of limitations provided in section 336.2–725.

Although neither the district court nor the court of appeals reached the issue of when the City's cause of action accrued for purposes of section 336.2–725, the parties thoroughly briefed the issue before the district court and its resolution does not require factual determinations beyond those appearing in the present record. Thus, there is no reason to remand for further proceedings.

V

In conclusion, Minn.Stat. § 541.051 as amended in 1988 cannot be retroactively applied to bar the City's actions initiated in 1987 because the City had no opportunity to comply with the new provision. The pre–1988 version of section 541.051, requiring legal action to be commenced within two years of discovering a defective condition, governs the City's claims against SEH.

The district court erred in granting summary judgment for SEH because the City identified genuine issues of material fact with respect to when it discovered treatment facility improvements designed by SEH were arguably defective. The City's claims against SEH are therefore remanded for trial.

In light of this court's decision in *Valley Farmers'*, Minn.Stat. § 336.2–725, the UCC statute of limitations, governs the City's claims against Clow Corporation because those claims arise from a contract for the sale of goods. Although the district court did not resolve the issue, the present record provides this court adequate ground to conclude that the City's action against Clow was initiated more than four years after its cause of action accrued and thus, that the City's claims against Clow are time barred.

Reversed and remanded.

COYNE, J., took no part in the consideration or decision of this case.