**HOUSING AND REDEVELOPMENT AUTHORITY FOR CROOKSTON, MINNESOTA, Respondent,**

v.

**AGASSIZ CONSTRUCTION, INC., defendant and third-party plaintiff, Appellant.**

**ENGINEERS–ARCHITECTS, PC, et al., defendant and third-party plaintiffs, Appellants,**

v.

**C & B SALES CORPORATION, d/b/a Handee Home Center, Third–Party Defendant,**

**Northwest Wholesale Lumber, Inc., third-party defendant, Respondent.**

No. C6–91–600.

Court of Appeals of Minnesota.

Nov. 5, 1991.

R.B. McLarnan, Gjevre, McLarnan, Hannaher, Vaa, Skatvold & McLarnan, Moorhead, for Housing and Redevelopment Authority for Crookston, Minn.

Richard C. Taylor, Michael J. Tye, Dickel, Johannson, Taylor & Rust, P.A., Crookston, for Agassiz Const., Inc.

Michael F. Daley, Patrick W. Fisher, McConn, Fisher, Olson and Daley, Ltd., Grand Forks, N.D., for Engineers–Architects, PC.

Scott P. Drawe, Stich, Angell, Kreidler & Muth, Minneapolis, for Northwest Wholesale Lumber, Inc.

David D. Hammargren, Jeffrey C. Paulson, Christoffel & Elliott, P.A., St. Paul, for amicus curiae Associated General Contractors of Minnesota.

Considered and decided by HUSPENI, P.J., and AMUNDSON, and THOREEN *, JJ.

## OPINION

HUSPENI, Judge.

On appeal from summary judgment, appellants allege the trial court erred when it applied the UCC statute of limitations to this case and barred their third-party indemnification actions which were based on a breach of warranty that arose out of a sale of goods. We affirm.

## FACTS

In March 1990, respondent Housing and Redevelopment Authority for Crookston, Mn (HRA) contracted with appellant Engineers–Architects, PC and Cal Marjamaa (Engineers/Architects) to provide engineering and architectural services in remodeling a building. In May 1981, HRA contracted with appellant Agassiz Construction (Agassiz), a general contractor, to remodel the building.

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

Agassiz ordered material for the building from C & B Sales, a company which has not responded to this lawsuit and which the parties believe has gone out of business. C & B ordered lumber from respondent Northwest Wholesale Lumber (NW Lumber). By specification, this lumber was to be specially treated with a fire retardant, and suitable for framing the exterior walls of the remodeling project. On June 25, 1981, NW Lumber delivered to Agassiz the load of lumber which purportedly met these specifications. Agassiz began construction August 31, 1981 and completed the project on October 1, 1982.

During an inspection of the building on September 18, 1984 and again on March 13, 1986, HRA observed a discoloration in the stucco on the exterior of the building. Upon further investigation, HRA discovered that the lumber which NW Lumber had provided was meant for interior use, not exterior use as required here. As a result, the chemical reaction between the treated lumber and condensation caused the lumber to bleed and discolor the stucco. For purposes of summary judgment and this appeal, the parties agree to these facts and concede that no genuine issues of material fact exist in this case.

On August 13, 1986, HRA sued appellant Agassiz for negligence and breach of warranties. On September 12, 1986, HRA amended its complaint to include appellant Engineers/Architects as defendants, alleging negligent supervision. Both appellants brought a third-party action for contribution and indemnification against NW Lumber on May 15, 1987, alleging negligence, breach of contract and breach of warranty. The trial court denied respondent NW Lumber's first motion to dismiss. Upon reconsideration, however, the court found that Minn.Stat. § 336.2–725 (1990) governs this action, granted respondent's second motion for summary judgment, and dismissed appellants' complaint with prejudice.

## ISSUES

1. Did the trial court err as a matter of law when it granted respondent's motion for summary judgment based on its determination that the UCC statute of limitations bars appellants' action for indemnification arising from a breach of warranty?

2. Does Minn.Stat. § 336.2–725 violate appellants' constitutional right to due process?

## ANALYSIS

### I.

On appeal from summary judgment, the appellate court must determine whether genuine issues of material fact exist and whether the trial court erred in its application of the law. *Niccum v. Hydra Tool Corp.*, 438 N.W.2d 96, 98 (Minn. 1989). Since the parties concede that no genuine issues of material fact exist, this court need only review the trial court's legal conclusions. When reviewing questions of law, this court need not defer to the conclusions of the trial court. *Dahlheimer v. City of Dayton*, 441 N.W.2d 534, 536 (Minn.App.1989), *pet. for rev. denied* (Minn. Aug. 15, 1989).

This case arises from a commercial transaction for the sale of lumber. The Uniform Commercial Code (UCC) provides the sole remedy for economic losses due to property damage resulting from a commercial transaction, and allows no recovery under tort theories of negligence or strict products liability. *Hapka v. Paquin Farms*, 458 N.W.2d 683, 688 (Minn.1990) (overruling broader holding of *Superwood Corp. v. Siempelkamp Corp.*, 311 N.W.2d 159, 162 (Minn.1981) which allowed tort recovery of economic losses for "personal injury or damage to other property" arising out of commercial transactions). The UCC was intended to displace tort liability and thus provides "a complete and independent statutory scheme enacted for the governance of all commercial transactions." *Hapka*, 458 N.W.2d at 688.

In Minnesota, the UCC statute of limitations for actions arising out of the sale of goods is codified at Minn.Stat. § 336.2–725 (1990):

(1) An action for breach of any contract for sale must be commenced within four

years after the cause of action has accrued.

\* \* \* \* \* \*

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when the tender of delivery is made.

■■■ The cause of action underlying appellants' claim for indemnity arises solely out of a sale of goods; Agassiz, as buyer, purchased the lumber from NW Lumber, the seller. Minnesota case law has held consistently that Minn.Stat. § 336.2–725 governs breach of warranty claims arising from such a commercial transaction. *See City of Willmar v. Short–Elliott–Hendrickson, Inc.*, 475 N.W.2d 73, 79 (Minn.1991); *Valley Farmers' Elevator v. Lindsay Bros. Co.*, 398 N.W.2d 553, 556–57 (Minn.1987); *TCF Bank & Sav., F.A. v. Marshall Truss Systems, Inc.*, 466 N.W.2d 49, 52 (Minn.App. 1991), *pet. for rev. denied* (Minn. Apr. 29, 1991). Appellants' cause of action for breach of warranty accrued when NW Lumber tendered delivery of the treated lumber in June 1981. Appellants brought their third-party claim in 1987, well beyond the statutory four-year limit.[1]

Appellants and amicus curiae argue that an indemnification action coupled with the breach of warranty claim distinguishes this case from *Hapka*, removes it from the realm of regular breach of warranty cases governed by the UCC, and brings it within the provisions of Minn.Stat. § 541.051, subd. 1 (1990) which provides:

(a) Except where fraud is involved, *no action* by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, *arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of the injury shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property* or against the owner of the real property *more than two years after* discovery of the injury or, *in the case of an action for contribution or indemnity, accrual of the cause of action*, nor, in any event shall such a cause of action accrue more than ten years after substantial completion of the construction.

\* \* \* \* \* \*

(b) \* \* \* [A] cause of action accrues \* \* \*, in the case of an action for contribution or indemnity, upon payment of a final judgment, arbitration award, or settlement arising out of the defective and unsafe condition.

(Emphasis added).

Conversely, respondent NW Lumber urges that the statute of limitations language of Minn.Stat. § 336.2–725 prohibits all actions commenced more than four years after accrual of the cause of action, regardless of the remedy sought.

All parties to this appeal cite this court's recent decision in *Minnesota Landmarks v. M.A. Mortenson Co.*, 466 N.W.2d 413 (Minn.App.1991), *pet. for rev. denied* (Minn. May 10, 1991), as support for their respective positions. In *Minnesota Landmarks*, the owner of a building sued the general contractor (Mortenson) for damages incurred from faulty skylights. *Id.* at 414. Mortenson entered a standstill agreement with the owner to toll the statute of limitations and thus did not have a Minn. Stat. § 541.051 defense available to it at trial. *Id.* Mortenson subsequently brought a third-party complaint for indemnity against the subcontractor-architect and the window manufacturer. *Id.* The trial court awarded these third-party defen-

---

**1.** We note that the court in *City of Willmar*, 475 N.W.2d at 80, determined that when a purchase contract requires the goods to pass a specific performance test once installed, "tender of delivery" does not occur until those tests occur. We find those facts distinguishable and that rule inapplicable to the present case. The purchase contract here included no such performance tests. On the contrary, the parties contracted for treated lumber which was to meet specifications upon delivery at the construction site.

dants a summary judgment on the grounds that they had the right to raise against the owner the statute of limitations defense under Minn.Stat. § 541.051. *Id.* at 415. On appeal, this court reversed the trial court and determined that under Minn. R.Civ.P. 14.01 the third-party defendant could not avail itself of a statute of limitations defense which the defendant Mortenson had waived in the standstill agreement. *Id.*

The *Minnesota Landmarks* court addressed two additional issues. It determined that pursuant to Minn.Stat. § 541.-051 the statute of limitations on Mortenson's contribution and indemnification claims began to accrue "upon payment of a final judgment, arbitration award, or settlement arising out of the defective and unsafe condition." *Id.* at 415–16. The *Minnesota Landmarks* court also noted that "Mortenson seems to raise a breach of warranty claim" against one of the third-party defendants, and determined that such claim would be time-barred under Minn. Stat. § 336.2–725. *Id.* at 416. Appellants here rely on the *Minnesota Landmarks* court's language applying Minn.Stat. § 541.051; respondents rely upon the language applying Minn.Stat. § 336.2–725.

We note three significant differences between the present case and *Minnesota Landmarks*. First, no subcontractor relationship exists among HRA, Agassiz and Engineers/Architects because HRA contracted separately with each of them. Second, whereas Mortenson's indemnity claim stood under Minn.Stat. § 541.051 on the basis of a contractual agreement to indemnify,[2] neither Agassiz nor Engineers/Architects entered such an agreement with one another or with NW Lumber. Third, and most importantly, Mortenson brought one

claim for indemnification based solely on a contract and, possibly, one for breach of warranty. *Id.* Here appellants brought only one action, that for indemnity based solely on NW Lumber's breach of warranty.

■ We note further that where the sale of goods is the predominant purpose of a sales contract, the UCC governs all breach of warranty claims which arise from that sale of materials even though those materials are later used to improve real estate. *City of Willmar*, 475 N.W.2d at 80 (reaffirming that holding in *Valley Farmers'*, 398 N.W.2d at 556–57). When Agassiz purchased the lumber from NW Lumber, the transaction was solely a sale of goods; no services or installation were involved. The lumber thus retained its status as "goods," and has not become an improvement to real property. We conclude for these reasons that the UCC statute of limitations must govern in this case, and that the provisions of Minn.Stat. § 541.051 do not apply.

■ Appellant Engineers/Architects argues that since they were not a party to the commercial transaction or to the breach, their sole claim against NW Lumber is for indemnity under Minn.Stat. § 541.051 and, therefore, they should not be subject to the statute of limitations in the UCC. We cannot agree. Minnesota has adopted a liberal privity provision under the UCC:

A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty.

Minn.Stat. § 336.2–318 (1990). This language would encompass Engineers/Architects in privity with NW Lumber, since the

---

**2.** The *Minnesota Landmarks* opinion notes that "Mortenson entered into a subcontract agreement with [third-party defendant]." *Minnesota Landmarks,* 466 N.W.2d at 414. The terms of that subcontract agreement were not challenged in *Minnesota Landmarks* nor relevant to the resolution of the issues there. In the indemnity clause of the subcontract, the subcontractor agreed:

to assume entire responsibility and liability for all damages * * * resulting from or in

any manner connected with, the execution of the work provided for in this subcontract or * * * resulting from the use by the Subcontractor, his agents or employees, of materials * * * whether [they] be owned by the Contractor, the Subcontractor or third parties, and the Subcontractor agrees to indemnify and save harmless the Contractor * * * from all such claims.

designer and engineer of a construction project could "reasonably be expected to * * * be affected by the goods and * * * [be] injured by breach of the warranty." *Id.* Furthermore, we note that Engineers/Architects' complaint, in fact, replicates the complaint of appellant Agassiz, and does state a claim for indemnity based upon breach of warranty. Engineers/Architects were properly included in the court's decision of the indemnity/warranty issue.

## II.

■ Finally, appellants argue that if they are deprived of their indemnity claims by application of Minn.Stat. § 336.2-725, that statute is unconstitutional. We note initially that a statute is presumed constitutional unless the party challenging it proves beyond a reasonable doubt that the statute violates a constitutional provision. *Sartori v. Harnischfeger Corp.*, 432 N.W.2d 448, 453 (Minn.1988). The court will declare a statute unconstitutional only when absolutely necessary. *Id.*

The Minnesota Constitution guarantees that no person will be deprived of property rights without due process of law. Minn. Const. art. I, § 7. Furthermore, "[e]very person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive." Minn.Const. art. I, § 8. To guarantee this right, the supreme court has declared that an action for indemnity begins to accrue when the indemnitee incurs a loss. *Calder v. City of Crystal*, 318 N.W.2d 838, 841 (Minn.1982). Appellants cite this holding in *Calder* to argue that application of Minn.Stat. § 336.2-725 to their indemnity claim violates their right to due process. We disagree.

The Minnesota Supreme Court has allowed the legislature to abrogate a common law right without an alternative remedy so long as it is pursuing a "legitimate legislative objective." *Calder*, 318 N.W.2d

at 844 (quoting *Tri-State Ins. Co. of Minn. v. Bouma*, 306 N.W.2d 564, 566 (Minn. 1981)). In creating the statute of limitations for actions arising out of sales contracts, the drafters clearly stated their purpose:

> This Article takes sales contracts out of the general laws limiting the time for commencing contractual actions and selects a four year period as the most appropriate to modern business practice. This is within the normal commercial recordkeeping period.

Uniform Commercial Code § 2-725 Comment (1989).

We recognize that complications may arise from an indemnity action based upon a breach of warranty when a party's cause of action accrues before the party has the opportunity to file a claim. Indeed, the supreme court has stated:

> [T]he legislature can[not] pass a statute allowing a substantive remedy and yet, by adopting a procedural statute of limitations, make the remedy impossible to achieve and meaningless by barring the suit from being brought before it has matured.

*Calder*, 318 N.W.2d at 844.

■ This case does not present the problematical situation envisioned in *Calder* because here appellants' only possible liability to HRA will be limited to their own negligence in the building project. They cannot and will not be held liable for the malfeasance of NW Lumber.[3] The trial court below properly addressed the issue of ultimate liability in its memorandum of law:

> Even though Northwest is no longer a party, if there is evidence of "fault" by Northwest, the issue of fault of a nonparty should be submitted to the jury. * * * If Northwest is found to be at fault, its fault would be compared with the fault of the parties and arguably, the apportionment of damages could be iden-

---

3. Under the predominant factor test set out in *Valley Farmers'*, 398 N.W.2d at 556, Minn.Stat. § 336.2-725 governs an action arising from a contract for sales and service when the contract was predominantly one for the sale of goods. We apply the UCC statute of limitations to the present case because it arose purely out of a sale for goods. We need not address the constitutional problems which may arise in an indemnity action where both sales and service are involved.

tical to that provided for in cases involving settling *Pierringer* defendants. * * * Arguably, this is an equitable result because [HRA] should not be permitted to recover, through contribution and indemnification, that which it cannot recover directly because the statute of limitations bars its direct claim.

For purposes of the summary judgment motion, NW Lumber has admitted fault in selling lumber that did not conform to the sales contract. Yet when HRA commenced this action five years after tender of delivery, the statute had already run on its direct action against NW Lumber. Minn. Stat. § 336.2–725. HRA thus could not recover from NW Lumber. Neither can it vicariously recover from these appellants damages attributable to NW Lumber. Appellants will be fully protected against the possibility of paying more than the damages attributable to their own negligence because the trial court will be required to submit to the jury the question of negligence of all potentially culpable parties, including NW Lumber.

The trial court did not deny appellants' right to due process when it barred their claims under Minn.Stat. § 336.2–725.

## DECISION

The trial court did not err when it applied Minn.Stat. § 336.2–725 to bar appellants' third-party indemnity claims against respondent based on a breach of warranty arising out of a sale of goods. Application of Minn.Stat. § 336.2–725 to appellants' indemnity claims based on breach of warranty does not violate appellants' constitutional rights to due process of law.

Affirmed.