**CITY OF WILLMAR, Minnesota,**
**Plaintiff,**

v.

**SHORT–ELLIOTT–HENDRICKSON,**
**INC., Respondent,**

Adolfson & Peterson, Inc., Defendant,

Clow Corporation, Appellant.

No. C8–92–1614.

Court of Appeals of Minnesota.

April 20, 1993.

Review Granted July 15, 1993.

Mark J. Heley, Mark A. Bloomquist, Meagher & Geer, Minneapolis, for respondent.

Robert E. Cattanach, Kevin C. Quigley, Oppenheimer Wolff & Donnelly, St. Paul, for appellant.

Considered and decided by SHORT, P.J., and NORTON and DAVIES, JJ.

## OPINION

NORTON, Judge.

Appellant Clow Corporation challenges trial court's refusal to grant it summary judgment dismissing respondent Short–Elliott–Hendrickson, Inc.'s cross-claim. Appellant argues that the trial court should have dismissed respondent's cross-claim as untimely under Minn.Stat. § 336.2–725 (1990). We reverse the trial court's refusal to grant summary judgment but affirm the trial court's holding that section 336.2–725 is constitutional.

## FACTS

In the mid–1970's, the City of Willmar employed respondent Short–Elliott–Hendrickson, Inc. (SEH) to recommend and design improvements to the City's waste water treatment facility. SEH recommended that the City install a series of rotating biological contractors (RBCs)—large cylinders that rotate bacteria into and out of waste water. The City accepted respondent's recommendation and construction began in 1981.

Adolfson & Peterson, Inc. (A & P) served as the general contractor for the project. Pursuant to a material subcontract with A & P, appellant Clow Corporation provided the RBCs. No contract was ever entered into between respondent and appellant. In addition to manufacturing the RBCs, appellant provided product information regarding the treatment capability of RBC units and recommended standards for the appropriate sizing of RBCs at the water treatment plant.

Construction at the site was substantially completed by September 1982. Shortly thereafter, the City began receiving complaints from nearby residents about offensive odors emanating from the facility. Respondent representatives concluded that they were caused by overloaded RBCs. Although the City later installed an air diffusion system suggested by respondent, the odor problem persisted.

In late 1987, the City served complaints on respondent, A & P, and appellant to recover damages for the faulty design and construction of the plant. The complaint alleged that respondent negligently designed improvements to the plant and that appellant negligently manufactured the RBCs and breached express and implied warranties in selling those units.

With its answer dated October 6, 1987, respondent served cross-claims against A & P and appellant, alleging negligence, breach of contract, and breach of warranties, and seeking contribution and/or indemnity for amounts ultimately owed or paid by respondent to the City.

Prior to trial, all defendants moved for summary judgment on statute of limitations grounds. The trial court granted all of the motions, whereupon the City, after entering into a *Pierringer* settlement with A & P, appealed as to respondent and appellant. [*Pierringer v. Hoger*, 21 Wis.2d 182, 124 N.W.2d 106 (1963)]. On appeal, this court held that Minn.Stat. § 541.051 (1986) barred the City's claim against appellant but that material issues of fact regarding the City's reasonable reliance on statements made by respondent remained, requiring remand on the issue of equitable estoppel.

On review of the court of appeals' decision, the supreme court held that the City's claims against appellant were governed by the statute of limitations set forth in Minn. Stat. § 336.2–725(2) (1992) and dismissed the City's claim against appellant as untimely. *City of Willmar v. Short–Elliott–Hendrickson, Inc.*, 475 N.W.2d 73, 79 (Minn.1991). The court found that the City's claims against appellant accrued in November 1982 and were not filed within four years of that date as required by section 336.2–725(2). The supreme court upheld the court of appeals' remand on the City's claim against respondent.

On remand, appellant moved for summary judgment dismissing respondent's cross-claims for contribution and indemnity. Appellant contended that respondent's contribution and indemnity claims had their basis in the same sales transaction as the City's claim against appellant; thus, argued appellant, section 336.2–725(2) also applied to bar respondent's contribution and indemnity claims. Respondent argued that the appropriate limitations period for its cross-claim was in section 541.051, not section 336.2–725. Respondent also argued that section 336.2–725 was unconstitutional under the facts of this case.

The trial court declined to dismiss respondent's cross-claim against appellant pursuant to section 336.2–725. In distinguishing *Housing & Redev. Auth. for Crookston, Minn. v. Agassiz Constr., Inc.*, 476 N.W.2d 781 (Minn.App.1991), the trial court noted that appellant not only manufactured the RBCs but also provided consultation services and assisted in testing the equipment. Thus, the court felt that it

was not faced with a pure sale of goods. On June 24, 1992, the trial court filed an amended order holding that, pursuant to Minn.Civ.App.P. 103.03(h), whether application of section 336.2–725 was proper and constitutional was "important and doubtful."

## ISSUES

I. Did the trial court err in refusing to dismiss respondent's cross-claim against appellant?

II. Is application of Minn.Stat. § 336.2–725 (1990) to bar respondent's cross-claim against appellant constitutional?

## ANALYSIS

### I.

■ The present dispute involves interpreting the scope of Minn.Stat. § 336.2–725 (1990). As a question of law, the trial court's interpretation of the statute is reviewable de novo. *McClain v. Begley,* 465 N.W.2d 680, 682 (Minn.1991).

Minn.Stat. § 336.2–725 provides:

(1) An action for breach of any contract for sale must be commenced within *four years* after the cause of action has accrued. * * *

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. *A breach of warranty occurs when tender of delivery is made,* except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

(emphasis supplied)

■ Perhaps the principal case construing the scope of section 336.2–725 is *Hapka v. Paquin Farms,* 458 N.W.2d 683 (Minn. 1990). There, the supreme court held that the Uniform Commercial Code controls exclusively with regard to commercial transactions involving property damage only. *Id.* at 688. *Hapka's* scope was clarified in *Lloyd F. Smith Co. v. Den–Tal–Ez, Inc.,* 491 N.W.2d 11, 16 (Minn.1992), which held that a non-U.C.C. tort remedy is allowed where a defective product causes damage to *other property* outside the classic mercantile transaction. A classic mercantile transaction occurs "where the parties to the sale are dealers in the same goods or, to use a more precise term, 'merchants in goods of the kind' * * *." *Id.* at 17. Thus, if either of the parties to an action for damage to other property is not a merchant, a tort remedy is allowed if the defective product damages other property (e.g., if a defective coffee pot burns down an entire building).

The applicability of section 336.2–725 to the *City's* cause of action against appellant was confirmed in *City of Willmar v. Short–Elliott–Hendrickson, Inc.,* 475 N.W.2d 73 (Minn.1991). Appellant argued that the two-year statute of limitations in Minn.Stat. § 541.01, subd. 1 applied because the RBCs it manufactured were incorporated into an improvement to real property (i.e., the City's waste water treatment facility). The supreme court disagreed, concluding that "[t]he time for testing whether a transaction is a sale of goods—i.e., a sale of movable things—is at the time of identification to the contract * * *." *Id.* at 79 (citing *Valley Farmers' Elevator v. Lindsay Bros. Co.,* 398 N.W.2d 553, 556 (Minn.1987)). Thus, the fact that the RBCs were later incorporated into an improvement to real property did not render the U.C.C. inapplicable to the sale of RBCs from appellant to A & P.

The supreme court held that the U.C.C. applied even though appellant rendered some consultation services for the RBCs. Applying the "predominant factor" test, the court classified the transaction as a sale of goods. *Id.* at 79 n. 3. *See also* 1 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 7, at 26 (3rd ed. 1988) (noting that in majority of cases, if "predominant purpose" is sale of goods, Article Two of U.C.C. applies to whole transaction).

The supreme court in *Willmar* held that the four-year statute of limitations began in November 1982, the date of appellant's "tender of delivery" of the RBCs. *Willmar,* 475 N.W.2d at 80–1. The City's claim against appellant was dismissed because it

was brought after the four-year statute of limitations had expired. Thus, respondent's argument that section 541.051 applies to the transaction in this case was rejected in *Willmar.*

Appellant argues that respondent's cross-claim should be dismissed pursuant to section 336.2–725 because, like the City, respondent attempts to hold appellant liable for defects in the RBCs that existed at the tender of delivery. Respondent, appellant claims, seeks to do what the City is precluded from doing: holding appellant liable for defects in the RBCs. Respondent counters that its cross-claim against appellant sounds in contribution and indemnity, both equitable remedies, and thus is not barred by the U.C.C.

In its cross-claim, respondent alleged damages resulting from "the active negligence, breach of contract, breach of warranties or other acts or failures of the defendants A & P and appellant * * *." On appeal, respondent refers to these causes of action collectively as "contribution." However, there was no contract between appellant and respondent, thus respondent has no cause of action for a breach. Moreover, any cause of action for negligence is governed by the U.C.C. because there was no damage to "other property." *Hapka,* 458 N.W.2d at 688, *Lloyd F. Smith Co.,* 491 N.W.2d at 16.

The present dispute centers totally upon economic loss to the City's water treatment facility. Thus, any action against appellant, whether maintained by the City or respondent, is governed by the U.C.C. breach of warranty provisions. Whether contribution should be allowed when breach of warranty is the cause of action is the pertinent question here.

■ Contribution rests upon common liability, not joint negligence or joint tort. Common liability exists when two or more actors are liable to an injured party for the same damages, even though their liability may rest on different grounds. *Guillard v. Niagara Machine & Tool Works,* 488 F.2d 20, 22 (8th Cir.1973).

■ In the present case, the City essentially charged respondent with negligence and breach of contract and appellant with breach of warranty. At common law, appellant's alleged breach of warranty, if true, would perhaps subject it to respondent's claim for contribution; both appellant and respondent would share a common liability for the City's damages.

But this court and others across the nation have recognized that the U.C.C. warranty provision alters the normal rules on contribution. The two principal Minnesota cases on this question are *Minnesota Landmarks v. M.A. Mortenson Co.,* 466 N.W.2d 413 (Minn.App.1991), *pet. for rev. denied* (Minn. May 10, 1991) and *Housing and Redev. Auth. for Crookston, Minn. v. Agassiz Constr., Inc.,* 476 N.W.2d 781 (Minn.App.1991). In *Minnesota Landmarks,* Minnesota Landmarks ("Landmarks") contracted with M.A. Mortenson ("Mortenson") to renovate the Landmark Center. Mortenson entered into a subcontract agreement with EPI Architectural Systems, Inc. ("EPI") to replace the existing skylights. EPI purchased glass skylight units from Insulated Glass Specialties, Inc. ("Insulated"). EPI completed installing the skylights in 1978. On May 12, 1989, Landmarks sued Mortenson because the skylights were defective. Mortenson then brought third-party actions against EPI and Insulated for contribution and indemnity.

Based on the language of Minn.Stat. § 541.051, this court held that Mortenson's third-party action against Insulated for contribution and indemnity was not time-barred. However, Mortenson's claim for breach of warranty was explicitly time-barred by Minn.Stat. § 336.2–725 because the panels were delivered ten years before the action was filed.

In *Agassiz,* the Housing and Redevelopment Authority ("HRA") contracted with Agassiz Construction ("Agassiz"), a general contractor, to remodel a building. Agassiz ordered materials for the building from C & B Sales, which ordered lumber from Northwest Wholesale Lumber ("NW Lumber"). On June 25, 1981, NW Lumber delivered the lumber for the project to Agassiz. Unbeknownst to Agassiz, the lumber was defective when received. In August

1986, HRA sued Agassiz for damages caused by the defective lumber. Agassiz brought a third-party action for contribution and indemnity against NW Lumber in May 1987.

This court agreed that Agassiz' third-party action against NW Lumber was governed by section 336.2–725's four-year statute of limitations because it arose "solely out of a sale of goods; Agassiz, as buyer, purchased the lumber from NW Lumber, the seller." *Id.* at 784. This court noted that where the sale of goods is the *predominant* purpose of a sales contract, the U.C.C. governs all breach of warranty claims which arise from that sale of materials even though those materials are later used to improve real estate. *Id.* at 785. Aggasiz' cause of action for breach of warranty accrued when NW Lumber tendered delivery of the lumber in June 1981, approximately six years before the statutory four-year limit.

The trial court's attempt to distinguish *Agassiz* from the present case is unconvincing. The trial court acknowledged that although respondent refers to its cause of action as "contribution," as in *Agassiz,* "the essential allegation * * * is the sale of a defective product." The court attempted to distinguish *Agassiz* from the present case by noting that appellant, in addition to manufacturing the RBCs, provided consultation and testing services, whereas the manufacturer in *Agassiz* merely sold and delivered goods.

This holding flies in the face of the supreme court's ruling in *Willmar,* 475 N.W.2d at 79 n. 3, that appellant's sale of RBCs to A & P, while involving some services, was "predominantly" a sale of goods, and thus subject to section 336.2–725. Although appellant rendered some consultation and technical services, its primary obligation was to manufacture and sell RBCs. Thus, the four-year statute of limitations of section 336.2–725 applies. *See also Valley Farmers' Elevator v. Lindsay Bros. Co.,* 398 N.W.2d 553, 556 (Minn.1987) (predominant purpose of transaction was sale of grain storage system despite rendition of incidental services).

Respondent argues that section 336.2–725 is inapplicable here because it did not purchase the RBCs from appellant. Rather, appellant sold the RBCs to A & P, the general contractor. However, this court in *Agassiz,* 476 N.W.2d at 785, noted that Minnesota has adopted a very liberal privity requirement:

> A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty.

(citing Minn.Stat. § 336.2–318 (1990)). *See also Lloyd F. Smith Co.,* 491 N.W.2d at 15 (holding that the U.C.C. applies to a sub-purchaser's cause of action based on the defective product itself and any consequential damage resulting therefrom).

To sum up, Minn.Stat. § 336.2–725 precludes a claim for contribution when the underlying causes of action supporting that claim sound either in breach of warranty or negligence resulting in no damage to "other property." The U.C.C.'s breach of warranty provisions clearly govern disputes involving these causes of action. The statute of limitations for breach of warranty is four years from the "tender of delivery." As we have previously held, this statute of limitations also applies to a claim for contribution when, as here, the claim sounds in breach of warranty or negligence resulting no damage to "other property." *See Hapka,* 458 N.W.2d at 688; *Lloyd F. Smith Co.,* 491 N.W.2d at 16.

## II.

Respondent argues that applying section 336.2–725 to bar its cross-claim against appellant would violate the Minnesota Constitution for two reasons. First, says respondent, it would violate the due process and right to remedy clauses (art. I, §§ 7, 8) by depriving respondent of rights of indemnity and contribution recognized at common law. Second, it would violate the equal protection provisions (Minn.Const. art. I, § 2 and art. XII, § 1) by subjecting materials suppliers to a less favorable statute of limitations than provided for other industry

professionals. We believe both arguments lack merit.

■ *Agassiz* dealt with the question of whether applying section 336.2–725 to bar indemnity claims violates due process. There, this court noted that the legislature may abrogate a common law right without providing an alternative remedy if it is pursuing a "legitimate legislative objective." *Agassiz*, 476 N.W.2d at 786 (citing *Calder v. City of Crystal*, 318 N.W.2d 838, 844 (Minn.1992)). This court then noted that section 336.2–725 supports the following legislative objective:

> This Article takes sales contracts out of the general laws limiting the time for commercial contractual actions and selects a four year period as the most appropriate to modern business practice. This is within the normal commercial recordkeeping period.

*Id.* (quoting U.C.C. § 2–725 cmt., 1B U.L.A. 588 (1989)).

■ In addition, a legislative classification will satisfy equal protection requirements if there is a reasonable connection between the effect of the challenged classification and the statutory goals. *State v. Russell*, 477 N.W.2d 886, 889 (Minn.1991). Appellant convincingly argues that the underlying purposes of the U.C.C.[1] are met by applying section 336.2–725 to respondent's cross-claim. The supreme court in *Willmar* clearly held that the U.C.C. governs this transaction. Therefore, the U.C.C. should also govern the indemnity and contribution claims that arise from the transaction.

### DECISION

The trial court's refusal to grant summary judgment in favor of appellant is reversed.

**Affirmed in part and reversed in part.**

---

1. Minn.Stat. § 336.1–102 (1990) states that the:
   (2) Underlying purposes and policies of this chapter are
   (a) to simplify, clarify, and modernize the law governing commercial transactions;

(b) to permit the continued expansion of commercial practices through custom, usage, and agreement of the parties;
(c) to make uniform the law among the various jurisdictions.