[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION FOR SUMMARY JUDGMENT (#200)
I.
The plaintiffs are owners and operators of a cogeneration power facility in Hartford (the Project). The plaintiff CCF-1, a wholly owned subsidiary of the named plaintiff Flagg Energy Development Corporation (FEDCO), is the owner of the Project. The plaintiff Process Construction Supply, Inc. (PCSI) built the Project in accordance with a turnkey construction agreement which it entered into with the plaintiff CCF-1.
On November 12, 1987, PCSI and Sulzer Turbosystems International (STI) entered into a Purchase Agreement, pursuant to which PCSI purchased from STI two gas turbine generator package units. Each unit contained a gas turbine engine manufactured by the defendant Allison Gas Turbine Division of General Motors Corporation (Allison). The units also included equipment received from other manufacturers. STI, while not the manufacturer of the units, coordinated their packaging and installation into the Project.
In the aforementioned purchase agreement STI warranted to PCSI, inter alia, that the generator units would be free of defects, would conform to applicable specifications, and would be fit for the use and purpose intended. STI further agreed that it would replace or remedy any defective material or equipment, subject to certain conditions, which might arise within one year of the date of acceptance.
The two turbine engines known as engines #506 and #507, were delivered to the project on May 27 and June 23, 1988, respectively. By July 26, 1988, STI completed installation of both the first package unit (Unit 1) which included engine #506, and the second unit (Unit 2) which included engine #507. Thereafter, disputes arose between PCSI and STI regarding the CT Page 1465 timeliness of delivery of the units and STI's liability for damages by reason of late delivery. These disputes were settled by an agreement, dated July 31, 1990 (1990 Settlement Agreement), pursuant to which Allison agreed that it would assume STI's obligations under the 1987 Purchase Agreement. Also, as part of the Settlement Agreement, FEDCO and Allison entered into a contract under which FEDCO purchased a third gas turbine engine from Allison described as engine #508.
As to engine #508, it is not disputed that prior to the filing of the plaintiffs' complaint FEDCO transferred its interest therein to Kenetech Facilities Management, Inc. (KFM), a corporation which is not a party to this action.
The complaint, filed on October 26, 1992, sounds in breach of contract and breach of warranty with reference to engines #506, #507 and #508. The alleged damages consist of past and future lost profits and projected increased costs of operation and maintenance.
 II.
On September 27, 1994, the defendant Allison filed a motion for summary judgment. The motion is based on the following claims:
 (1) that the plaintiffs' allegations set forth in the first, second, third, and fifth counts of the revised complaint, to the extent that they assert breach of warranty under the Uniform Commercial Code of this State, with regard to engines #506 and #507, are barred by the applicable four year statute of limitations;
 (2) that the plaintiffs FEDCO and PCSI have alleged no valid claim for relief because of their non-ownership of engines #506 and #507 and assignment of warranty rights prior to filing of the complaint;
 (3) that no cause of action may be maintained in regard to engine #508 because no plaintiff is owner of this engine or the recipient of any warranty rights which can CT Page 1466 give rise to a cause of action based on a breach thereof; and
 (4) that no cause of action is set forth in the fifth count of the revised complaint which is based on a claimed repair and replace warranty unrecognized by the Uniform Commercial Code.
Counsel for the parties have filed extensive memoranda of law with supporting affidavits and documentation and were heard in oral argument in support of their respective positions.
 III.
"[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Suarezv. Dickmont Plastics Corp. , 229 Conn. 99, 105 (1994); P.B., § 384. The burden of demonstrating the non-existence of such fact rests with the moving party; D.H.R. Construction Co. v.Donnelly, 180 Conn. 430, 434 (1980); and in making a finding with reference thereto the court must examine the evidence in the light most favorable to the non-movant. Wadia Enterprises, Inc.v. Hirschfeld, 27 Conn. App. 162, 166 (1992).
A motion for summary judgment is a proper vehicle to raise the issue of a limitations of action bar. See e.g., Burnsv. Hartford Hospital, 192 Conn. 451, 460 (1984); Puro v. Henry,32 Conn. Sup. 118, 119 (1975); Souza v. Great Atlantic PacificTea Co., 25 Conn. Sup. 174, 175 (1964).
 IV.
The parties agree that § 42a-2-725 of Connecticut's Uniform Commercial Code sets forth the applicable statute of limitations. It provides in sub-section (1) as follows:
 "An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. . . ."
Further relevant and definitive language appears in sub-section (2): CT Page 1467
 "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."
This action was commenced on October 26, 1992. Because the engines were delivered to the Project on May 27 and June 23, 1988, it is the defendant's contention that the action is untimely in that the four year period had already run.
While not disputing the accuracy of the above dates, the plaintiffs argue that the cause of action did not accrue until the post-installation "Acceptance Test" was performed. It is "passage of the Acceptance Test", they argue, "[that] is a bright light of demarkation [sic]." Pl. Brief (10-21-94), p. 7. Because the Acceptance Test was run between November 8 and 11, 1988, the statute of limitations defense, the plaintiffs urge, is inappropriate.
Alternatively, the plaintiffs argue that the defendant "breached express warranties of future performance, including warranties that [Allison] would remedy defects in the engines; the engines would average at least 15,000 hours of operation between removals; and the engines could be maintained for less than $18.00 per fired hour." Id., pp. 10-11. The statute of limitations for breach of such warranties under sub-section (2), they point out, does not begin to run until the breach is, or should have been, discovered.
 A.
This court in reaching its result relies on City ofCincinnati, Ohio v. Dorr-Oliver, Inc., 659 F. Sup. 259
(D. Conn. 1986), a case with facts similar to those in the instant case. There the district court found that "tender of delivery as contemplated by § 42a-2-725 is not contingent upon inspection, testing, or acceptance." "In Connecticut," the court said, "as is true elsewhere, absent the § 42a-2-725(2) exception, a breach CT Page 1468 of warranty occurs at the time of the delivery of the goods." p. 262.
The Dorr-Oliver court, while conceding that the rule may seem harsh, adopted language of the Delaware district court[Raymond-Dravo-Langenfelder v. Microdot, Inc., 425 F. Sup. 614,617 (D. Del. 1977)]: "Whether or not the buyer at that time `accepts' the goods, as that term is used in the Code, or, on the other hand, withholds acceptance until he or she has had an opportunity to fully inspect for defects, does not affect when the buyer must institute suit for breach of warranty. This is so even if the defect does not appear until after the limitations period has run." p. 262. To put it more succinctly, "[t]he statute normally commences to run upon tender of delivery, and the clock ticks even though the buyer does not know the goods are defective." White and Summers, Uniform Commercial Code (3d Ed. 1988), § 11-9, pp. 476-77.
Language of the November 12, 1987 Purchase Agreement does not modify the meaning of when delivery would occur. In fact, payment of 25 percent of the purchase price balance was due within thirty days of delivery of the engines to the site and upon such payment only 5 percent of the total would remain to be paid. As to the latter amount, the Agreement provides for payment "30 days after satisfactory completion of the PreliminaryAcceptance Test, but not more than 60 days from date of delivery
or 90 days from alternative due to STI supply" (underlining added). A clear distinction between delivery and acceptance testing is apparent.
The purpose of § 42a-2-275 is "to provide a finite period in time when the seller knows that he is relieved from liability for possible breach of contract for sale or breach of warranty." Ontario Hydro v. Zallea Systems, Inc., 569 F. Sup. 1261,1267 (D. Del. 1983). Even if such finite period were predicated on the date of installation (July 26, 1988), the four year period has run and the result is the same.
 B.
It is the court's finding that the exception provision of § 42a-2-725(2) is also unavailing to the plaintiffs. As theDorr-Oliver court observed, to find an explicit warranty of future performance when there is an "undisputed absence of a specific time period in the alleged future performance guarantee CT Page 1469 runs afoul of settled law." p. 264. "[T]his extension of the normal warranty period does not occur in the usual case, even though all warranties in a sense apply to the future performance of goods. The controlling portion of 2-725(2) applies only in a case in which the warranty `explicitly extends to future performance,' . . .[such as] one in which the seller gave a `lifetime guarantee' or one in which he, for example, expressly warranted that an automobile would last for 24,000 miles or four years whichever occurred first." White and Summers, UniformCommercial Code (3d Ed. 1988), § 11-9, p. 478. It must be, in short, that type of promise which "by its terms purports to make a warranty with respect to the future condition of the chattel. . . ." Rempe v. General Electric Co., 28 Conn. Sup. 160,163 (1969).
The above described warranty is not present in the instant case, and the court is not persuaded on the strength of the case law authority on which the plaintiffs rely; [see Latham Associates, Inc. v. William Raveis Real Estate, Inc., 218 Conn. 297
(1991); City of New York v. Pullman, Inc., 662 F.2d 910 (2d Cir. 1981), cert. den. 454 U.S. 1164 (1982); City of Wilmar v.Short-Elliot Hendrickson, Inc., 475 N.W.2d 73 (Minn. 1991);Binkley Co. v. Teledyne Mid-America Corp., 333 F. Sup. 1183 (E.D. Mo. 1971), aff'd 460 F.2d 278 (8th Cir. 1972) et al.]; that a factual basis exists which would invoke application of §42a-2-725(2) and thereby extend the limitations period.
Parenthetically, it may be noted that the plaintiffs' argument that running of the statute of limitations should not commence until completion of the acceptance test ["Thus, passage, or at least performance of the Acceptance Test, is a precondition to tender of delivery." Pl. Brief (10-21-94), p. 12] is, if adopted, capable of producing what might be termed a strange result. Since the contract is silent as to when the test is to be performed, application of § 42a-2-725 (2) may result in a situation where the statute of limitations never starts to run, even though the system is installed and running.
 V.
The defendant argues that, apart from the plaintiffs' warranty claims as to engines #506 and #507 and the issue of these being time-barred, CCF-1 is the only plaintiff who might have a breach of warranty claim. The court agrees. CT Page 1470
The plaintiffs have advanced no claim that FEDCO has any cause of action relating to any of the engines, and, to all intents and purposes, have acknowledged that it is not a proper party to this action.
As to PCSI, the defendant points out that following purchase of engines #506 and #507 under the 1987 Purchase Agreement and prior to the 1990 Settlement Agreement, PCSI assigned all of its warranty rights with respect thereto to CCF-1. A valid assignment of the rights of the assignor in the subject matter of the assignment will vest such rights in the assignee and, correspondingly, extinguish such rights in the assignor. Bouchard v. People's Bank, 219 Conn. 465, 473 (1991).
Not only do the plaintiffs not dispute the assignment, they assert it. Rev. Compl., para. 12. What is argued, however, is that PCSI has a contractual obligation to indemnify CCF-1 for losses it may sustain should the engines fail to perform to specified standards. Be that as it may, PCSI can point to no damages it has incurred, and there is no evidence that CCF-1 has made or threatened any claim against it.
This is not a situation where there is a dispute as to the amount, if any, of actual damages. If so, a question of fact would exist rendering summary relief inappropriate. SanitaryServices Corp. v. Greenfield Village Assn., Inc., 36 Conn. App. 395,400 (1994). There are no damages, and any likelihood thereof is so remote and speculative that PCSI cannot be said to have any current and valid interest in this litigation.
 VI.
The plaintiffs' counsel, during oral argument, offered to withdraw all claims with regard to engine #508. It is the court's understanding that the plaintiffs concede non-ownership of this engine and of any attendant warranty rights. Defendant's counsel expressed dissatisfaction with the offer, preferring instead summary adjudication of such claims as the defendant's motion requests.
 VII.
The defendant argues that the fifth count of the revised complaint which alleges breach of a "repair and replace" warranty is not a cause of action recognized by the Uniform CT Page 1471 Commercial Code. Rather, it is the defendant's claim that repair and replacement is a limited remedy for a breach of warranty pursuant to § 42a-2-719 (1) of the Code. The court disagrees.
The purchase order contains the following provision:
 "All material and equipment furnished under this order shall be guaranteed by the Seller against defects, and Seller agrees to replace without charge to Purchaser said material and equipment, or remedy any defects latent or patent not due to ordinary wear and tear or due to improper use or maintenance which may develop within one year from the date of acceptance by the Owner, or within the guarantee period set forth in applicable plans and specifications, whichever is longer."
By this language the seller has assumed the affirmative obligation to "remedy any defects." Such language is not a mere limitation of remedy but an express warranty. Conte v. DwanLincoln-Mercury, Inc., 172 Conn. 112, 122-23 (1976). As another court described it, "[t]he guarantee against defects in workmanship and material is clearly a repair guarantee that does not contemplate other remedies. . . ." City of Cincinnati v.Dorr-Oliver, Inc., supra, 266.
The court agrees with the plaintiffs' contention that the defendant's "express obligation to `remedy any defects' is a warranty of future performance." Pl. Brief (10-21-94), p. 31. On its face it would seem to be immune from a limitations of action defense. More important, however, the court is not persuaded, as to this warranty, that the defendant has shown that "it is quite clear what the truth is, and that [such showing] excludes any real doubt as to the existence of any genuine issue of material fact." Yanow v. Teal Industries, Inc.,178 Conn. 262, 269 (1979). The language of the purchase order raises too many factual questions, as to which the plaintiffs must be "given the benefit of all favorable inferences that can be drawn."Evans Products Co. v. Clinton Building Supply, Inc.,174 Conn. 512, 516 (1978). Summary disposition is inappropriate.
VIII. CT Page 1472
In accordance with this opinion the following order may enter:
(1) as to the claims of breach of warranty contained in the first, second, third, and fifth counts of the revised complaint, except as to the repair and replace warranty alleged in the fifth count, the defendant's motion for summary judgment is granted; as to the said repair and replace warranty, the motion for summary judgment is denied.
(2) as to all claims of FEDCO and PCSI contained in the revised complain:, the motion for summary judgment is granted; and
(3) as to all claims of damages contained in the revised complaint which have reference to engine #508, the motion for summary judgment is granted.
Gaffney, J.